OPINION OF THE COURT
Fuchsberg, J.
We treat here with section 200 of the General Business Law, a statute delineating the responsibilities of the hotel industry with regard to the valuables of its millions of patrons.
Plaintiffs, registered guests, bring suit on a theory of absolute liability for the loss of two valuable diamond rings which disappeared from their hotel room. In its answer, the defendant hotel pleaded section 200 by way of affirmative defense. Asserting that the hotel’s vault was not available to guests at the time they attempted to place the jewelry there for safekeeping, plaintiffs moved for summary judgment (CPLR 3212) or, in the alternative, for an order striking the defense (CPLR 3211, subd [b]).[1] Special Term held, inter alia, that the hotel’s failure to provide access to its safe at all times did not necessarily preclude it from claiming the protection of section 200, and, concluding that the "reasonableness of the vault hours should be left to the judgment of the triers of fact”, denied the motion. On review, the Appellate Division in effect ruled that, since the statute does not speak of "reasonable hours”, a hotel’s maintenance of vault facilities, even when available to guests only at limited times, generally entitles the hotel to the statutory benefits; on that basis, the court granted summary judgment to the defendant, dismissing the complaint on the law.[2]
*111 On our review, we hold that a hotel may not claim the limitations on liability afforded it by section 200 of the General Business Law at times when it fails to make a safe available to its guests. We therefore determine that summary judgment should not have been granted and the complaint, accordingly, should be reinstated. Our reasons follow.
Section 200 of the General Business Law reads: "Whenever the proprietor or manager of any hotel, motel, inn or steamboat shall provide a safe * * * for the safe keeping of any money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones, belonging to the guests * * * and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided * * * in a public and conspicuous place and manner in the office and public rooms[3] * * * and if such guest or traveler shall neglect to deliver such property * * * for deposit in such safe, the proprietor or manager * * * shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise”. Beyond this, in the absence of a special agreement in writing, the statute goes on to limit a hotel’s liability for property so deposited with it, whether the loss is sustained "by theft or otherwise”, to a sum not exceeding $500. (See, generally, Wilkins v Earle, 44 NY 172, 185-186.)[4]
Like most statutes, section 200 did not spring full blown out of a void. It hearkens back to the common law, under which innkeepers were absolutely liable for the full value of property patrons committed to their custody,[5] and dates at least as *112 far back as the fourteenth and fifteenth centuries. Justified by the fact that a traveler usually had nowhere but an inn to turn to as a refuge from bandits, the law shifted the responsibility for keeping travelers’ possessions secure onto those who, by maintaining hostelries, held out safe havens for wayfarers and their property. Generally speaking, the liability so imposed was akin to that of an insurer, the only exceptions being for losses occasioned by the guest’s own negligence or fraud, by the public enemy, or by an act of God. (See Hulett v Swift, 33 NY 571, 572-575; Beale, Law of Innkeepers, § 181.)
But modern history tells us that, with time, conditions facing both innkeeper and guest changed. Travel became more frequent, more regular and more patrolled; by and large, it thereby became less perilous. By the mid-nineteenth century, technological advances in modes of transportation, the mobility that these made possible, the resulting wider distribution of population, and other social and material changes spawned growing numbers of inns and hotels. Especially in urban and resort areas, these tended to be larger and less personal in their customer relations. Also, travelers were coming to have other means, chiefly insurance, by which they could protect themselves against losses from pilferage. With these changes came agitation for modification of the expansive common-law rule. Responding to these developments, first New York and Pennsylvania in 1855, and later other States, offered a legislative answer, which to this day largely remains unaltered (see Ann., 9 ALR2d 818).
This background in mind, we turn now to the events leading to the invocation of the statute in the case before us. It is agreed that on Friday afternoon the plaintiffs William and Shelby Modell, accompanied by their daughter and son-in-law, checked into the defendant’s large resort hotel. No one disputes but that the hotel provided a safe-deposit vault for the use of its guests and that, shortly after the plaintiffs’ arrival, the daughter requested and was assigned one of its boxes. Plaintiffs allege that she then placed two diamond rings belonging to her mother in the box and that, late the following afternoon, she withdrew them from the box for her mother to wear while attending the Saturday evening festivities sponsored by the hotel.
*113 Sometime after midnight, however, upon the conclusion of the hotel’s night club performance and before retiring, when the Modells and their daughter attempted to redeposit the jewelry, a hotel desk clerk informed them that the vault was closed and that they would have to retain possession of their valuables until it was opened in the morning. The defendant concedes that it would not allow guests access to the vault between the hours of eleven in the evening and eight in the morning. The Modells claim they thereupon secreted the jewelry in their room only to find, upon arising at about 9:00 a.m. that the chain lock with which they had secured the room had been cut from the outside and the rings were missing. They promptly notified the hotel and police of what they took to be a theft.
In now applying the statute to this factual framework, we first remark on the obvious: the statute’s wording is plain. This is not a new observation. Almost from the time the legislation was enacted, the courts recognized that "there is nothing in the statute itself indicating any intent other or less extensive than the unequivocal language imports” (Hyatt v Taylor, 42 NY 258, 261). So we by no means tread the quicksand that surrounds a case in which less than definitive statutory language requires a choice among differing interpretations, the resolution of which, in turn, compels a choice among differing canons of construction (cf. Matter of CountryWide Ins. Co. v Wagoner, 45 NY2d 581, 588). Rather, when, as here, a statute is free from ambiguity and its sweep unburdened by qualification or exception, we must do no more and no less than apply the language as it is written (see People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Woodbury, 208 NY 421, 424-425; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 76, 94; 2A Sutherland, Statutory Construction [4th ed], §§ 46.01, 46.04).
Thus read, the statute offers the innkeeper an option: "provide” a safe for your guests and sharply restrict your liability; or, feel free to do absolutely nothing about a safe and continue the risk of exposure to open-ended common-law liability. But, whichever choice you make, since the statute is in derogation of the common-law rule, to obtain the benefit of the more circumscribed liability which section 200 affords, you must conform strictly with its conditions (see Millhiser v Beau Site Co., 251 NY 290).
The statute fixes no time when a safe may or must be *114 provided. Nor does it mandate availability around the clock. A fortiori, it does not limit the operation of a safe to a "reasonable time”. These matters are left entirely up to the hotel. The statute makes .no effort to evaluate cost or convenience. Neither does it distinguish between large and small inns, between those that cater to the large convention and those that cater to the individual patron, between those that come alive at night and those that do so in the day, between those that have a wealthy clientele and those that do not. The legislative formula is uncomplicated. It says, straightforwardly, that "whenever” a safe is provided, the liability limitations shall be applicable. Conversely, at those times when an innkeeper chooses not to provide a safe for the use of its guests, he cannot claim the statutory protection.
In the face of the simplicity that characterizes the statute’s structure, the hotel relies on two venerable cases to import into the statute certain unexpressed exceptions. To the contrary, these cases, on close analysis, are in keeping with our interpretation. Thus, in Rosenplaenter v Roessle (54 NY 262), where a newly registered procrastinating guest lost his valuables during his delay in delivering them to the safe, the court indeed did suggest that "There must be a brief period after the arrival of a guest at a hotel before he can make the deposit, and during this brief period the statute affords the hotel keeper no protection” (54 NY 262, 267); however, the unwarranted interpolation of this element of uncertainty turns up only as dictum for, in the end, the result, not inconsistent with today’s holding, was to deny recovery. Similarly, Bendetson v French (46 NY 266), a case permitting common-law recovery against an innkeeper for a loss occurring after a guest had removed his valuables from a safe in preparation for his departure, should not be viewed as creating a permissible deviation from the terms of the statute; rather, as the opinion in that case makes clear, the loss was attributable to negligence on the part of baggage-handling hotel employees and, hence, essentially, the statute was not dispositive (46 NY 266, 270; Rosenplaenter v Roessle, supra, p 267).
The defendant, also, would have us read the statute as though the phrase "as soon as” had been substituted for the word "whenever” and, similarly, "equip” for "provide”. But neither the express language of the statute nor its avowed purpose permits us to sanction what, in effect, would amount *115 to a substantive change, indeed, a literal rewriting of a carefully conceived and well-weathered statute. Had the Legislature meant to incorporate such qualifications, it easily could have done so. To the contrary, in the 125 years of the legislation’s long life, no such restriction has ever been essayed despite periodic legislative tinkering in other respects.[6]
More specifically, nowhere does section 200 suggest that an innkeeper may provide a safe part of the time and yet gain the benefit of the exemption all the time. Taken to its logical conclusion, this would not only deprive guests of their common-law right to seek recovery of their full losses against the innkeeper. But, by curtailing the period during which the surrogate medium of a safe is to be available, it also would leave the guests bereft of a full-time replacement for the innkeeper’s former round-the-clock incentive to maintain security. Had a statute as explicit in concept and form as is the one here been intended to give a hotel the advantages of a dramatic limitation on its liability for losses while still retaining the privilege to encroach on the temporal scope of the quid pro quo — a safe such as would afford the guests protection — surely it would have said so.
The defendant, therefore, may not have been entitled to base an affirmative defense under section 200, and certainly was not entitled to receive summary judgment on that account. Nevertheless, on the record before us, it was correct to withhold granting summary judgment to plaintiffs. Especially since the plaintiffs’ daughter made no affidavit in support of the motion (see Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1068; Utica Sheet Metal Corp. v Schecter Corp., 25 AD2d 928; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.09), the further development of relevant facts may be in order, including, inter alia, ones relating to the circumstances surrounding the actual disappearance of the rings, to whether the theft occurred at the time when the safe was not available to these guests and, of course, to the value of the rings.
From all this flows our conclusion that the order of the Appellate Division should be modified, by reversing the grant *116 of summary judgment to defendant and by reinstating the complaint, and otherwise should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order modified, with costs to plaintiffs-appellants, in accordance with the opinion herein and, as so modified, affirmed.

. The plaintiffs’ action was joined for trial with an action brought by the Zaldins, whose name captions the report of this appeal. The Zaldins did not join in the plaintiffs’ motion for summary judgment.

. The hotel did not cross-move for summary judgment, but the other side’s motion for such relief allows the court to search the record and, if warranted, grant summary *111 judgment in favor of the nonmovant (CPLR 3212, subd [b]; see, e.g., Wiseman v Knaus, 24 AD2d 869).

. The notices which the hotel posted, stating the fact that a "safe is provided”, complied fully with the statute.

. If the loss is the result of an innkeeper’s own negligence the statutory exemption from liability, where otherwise applicable, would not apply (see Jacobs v Alrae Hotel Corp., 4 AD2d 201, 203-204, affd 4 NY2d 769; Chatillon v Co-operative Apt. Co., 90 Misc 108, affd 171 App Div 910; see, also, Ann., 37 ALR3d 1276, 1288-1289). Because of the result we reach here and because plaintiffs’ cause of action, we note, is not premised on negligence but solely on the theory of absolute liability, we are not now called upon to decide whether in such event the $500 limitation would remain in effect (compare General Business Law, § 200, with § 201 ["in no event shall such keeper be liable beyond five hundred dollars, unless it shall appear that such loss occurred through his fault or negligence”]; see Adler v Savoy Plaza, 279 App Div 110, 117 [dissenting opn]).

. The innkeeper’s liability for wearing apparel and other personal property not enumerated in section 200, although also absolute at common law, was similarly circumscribed by a contemporaneously adopted statute (see General Business Law, *112 § 201; Wilkins v Earle, 44 NY 172, 178, supra; see, generally, Navagh, A New Look at the Liability of Innkeepers for Guest Property Under New York Law, 25 Fordham L Rev 62, 67-69).

. The amendments to the statute (originally L 1855, ch 421) are as follows: notice to be posted in public rooms instead of bedrooms (L 1883, ch 227); limiting to $500 value of articles hotel required to receive for safekeeping and to $250 for loss of any property received of undisclosed value (L 1892, ch 284); added "steamboat” to places entitled to statutory protection (L 1897, ch 305, § 1); inserted "motel” following "hotel” (L 1960, ch 839). (See Millhiser v Beau Site Co., 251 NY 290, 293-294.)