**Jose Maria Berga DE LEMA, Plaintiff,**

v.

**WALDORF ASTORIA HOTEL, INC., Defendant.**

**No. 83 Civ. 1075–CSH.**

United States District Court, S.D. New York.

May 14, 1984.

**20**

Robert H. Deaderick, Jr., New York City, for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant; Anthony E. Satula, Jr., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action brought within the Court's diversity jurisdiction, a hotel guest sues a New York City hotel owner for the theft of an attache case containing jewelry, which occurred while the guest was in the process of registering. Following depositions, both parties move for summary judgment. The case turns upon the proper construction and application of the innkeeper statute enacted in New York, section 200 of the General Business Law, 19 McKinney's Consol.L. of N.Y. (1968).

### I.

On October 30, 1982 plaintiff Jose Maria Berga de Lema, a Brazilian resident, arrived in New York City. His luggage consisted of three suitcases, an attache case, and a cylindrical bag. The attache case and the cyclindrical bag contained jewels. Plaintiff says the jewels in the case exceeded $300,000 in value. Plaintiff went from JFK Airport to the Waldorf Astoria Hotel (the "Hotel"), maintained by defendant, where he had a reservation.

Plaintiff handed over the three suitcases to hotel staff in the garage. He then ascended to the lobby, carrying the attache case and cylindrical bag, and first encountered an assistant manager, Mr. Baez, sitting behind a desk with a sign proclaiming his title. Plaintiff told Baez he had a reservation. Baez rang a bell and summoned a room clerk, Mr. Tamburino, to assist plaintiff. Plaintiff carried the case and bag from Baez's desk to a place at the counter opposite Tamburino, and put them on the floor.

Plaintiff gave this account in his deposition:

Q. What did Mr. Tamburino say to you, if anything, when you were facing him at position number two?
A. He asked me if I had a reservation. I said, "Yes. The name is Jose Berga de Lema."
And I said, "I want a safety deposit box."
He said, "Please fill out your registration."
The first thing I inquired about was a safety deposit box.
Q. He gave you a registration form to fill out?
A. To fill out.
Q. Did you fill out that form?
A. I filled out the form.

Tamburino testified by deposition:
Q. Do you recall any conversation with Mr. de Lema at the time that he was registering regarding his sister?
A. Vaguely. A little bit. I couldn't tell you exactly what, but the gentleman was talking about—I think he did talk about his sister.
Q. Do you recall him asking for a safety deposit box?
A. Yes, sir.
Q. What, if anything, did you instruct him about that?
A. I told him at the end of the counter, he could make a left. There was a safety deposit box.
Q. When did he make this request?
A. I believe it was during the conversation of checking him in.
Q. Before you went to the cashier?
A. Yes, sir.
Q. With his money?
A. Yes, sir.

Whatever discrepancies may emerge from this testimony, it is common ground that plaintiff at no time, either prior to his arrival at the Hotel, or in conversation with assistant manager Baez or with room clerk Tamburino, stated that he was carrying thousands of dollars worth of jewelry in his attache case.

While plaintiff was filling out the reservation form, paying $300 in cash as an advance, and Tamburino was filling out a receipt for that amount, plaintiff had placed the attache case and the cylindrical bag on the floor. A blond woman jostled plaintiff, apparently creating a diversion. When plaintiff next looked down, he discovered that the attache case was gone. The case and its contents have never been recovered. This suit followed.

## II.

Both parties recognize that the case is governed by N.Y. General Business Law, § 200, which provides:

*Safes; limited liability*

Whenever the proprietor or manager of any hotel, motel, inn or steamboat shall provide a safe in the office of such hotel, motel or steamboat, or other convenient place for the safe keeping of any money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones, belonging to the guests of or travelers in such hotel, motel, inn or steamboat, and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided, in which such property may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel, motel, or inn, or saloon of such steamboat; and if such guest or traveler shall neglect to deliver such property, to the person in charge of such office for deposit in such safe, the proprietor or manager of such hotel, motel, or steamboat shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise; but no hotel, motel or steamboat proprietor, manager or lessee shall be obliged to receive property on deposit for safe keeping, exceeding five hundred dollars in value; and if such guest or traveler shall deliver such property, to the person in charge of such office for deposit in such safe, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise, in any sum exceeding the sum of five hundred dollars unless by special agreement in writing with such proprietor, manager or lessee.

At common law, an innkeeper was an insurer of goods delivered into his custody by a guest, and so was absolutely liable for the loss or destruction of such goods "unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy." *Goncalves v. Regent International Hotels, Ltd.,* 58 N.Y.2d 206 at 214, 460 N.Y.S.2d 750 at 754, 447 N.E.2d 693 at 697 (1983), quoting *Hulett v. Swift,* 33 N.Y. 571, 572. Section 200 of the General Business Law represents the current form of legislation enacted by the New York Legislature to restrict an innkeeper's exposure by providing a statutory exception to the common-law rule. Being in derogation of the common law, the statute is to be strictly construed. *Goncalves, supra,* at 58 N.Y.2d 215, 460 N.Y.S.2d at 755, 447 N.E.2d at 698. However, the courts have not lost sight of the legislature's original purpose: to benefit hotel owners. Thus in *Rosenplaenter v. Roessle,* 54 N.Y. 262 (1873), a hotel provided a safe in conformity with the statute. Plaintiff and her husband arrived, registered, and were given a room. Their luggage was sent to the room, and left there unattended for about twenty minutes. During that interval the room was broken into and jewelry stolen from the luggage. Plaintiff's claim against the hotel was rejected, the Commission of Appeals stating:

The true rule undoubtedly is as above stated, that it is the duty of the guest to make the deposit whenever he has time and opportunity to do so. This rule may be inconvenient to guests, but the statute

was not intended for their benefit. It was manifestly enacted for the protection of the hotel keepers. 54 N.Y. at 268.

It is clear that under this rule, the present plaintiff's claim for damages at large fails. By virtue of plaintiff's advance reservation, his occupancy of a room at the Waldorf was in the definite contemplation of both parties. At the time of the loss, plaintiff was in the process of actually registering. These circumstances are sufficient to bring about the relationship of guest and hotel keeper. *Adler v. Savoy Plaza,* 279 App.Div. 110, 108 N.Y.S.2d 80 (1st Dept.1951); cf. *Ross v. Kirkeby Hotels, Inc.,* 8 Misc.2d 750, 160 N.Y.S.2d 978 (1st Dept.1957). Neither party contends otherwise. In consequence, the Hotel may claim the benefit of the statute's limited liability. It is also common ground that the Hotel maintained an appropriate safe or safety deposit boxes, and that the requisite notices called for by the statute were given.

The case therefore turns upon whether or not plaintiff complied with his duty, as summarized in *Rosenplaenter v. Roessle, supra,* "to make the deposit whenever he has time and opportunity to do so." If the guest's property has a value in excess of $500, that deposit must be accompanied by a declaration of value, so that hotel representatives are given the opportunity to decide whether or not to enter into a special agreement in writing for safekeeping. The hotel owner is entitled to that opportunity to consider the matter because the statute provides that "no hotel ... shall be obliged to receive property on deposit for safekeeping, exceeding five hundred dollars in value." Absent such declaration by the guest, the hotel keeper's liability is limited to $500. *Carlton v. Beacon Hotel Corp.,* 3 A.D.2d 28, 157 N.Y.S.2d 744 (1st Dept.1956); cf. *Honig v. Riley,* 244 N.Y. 105, 109, 155 N.E. 65 (1926) (Cardozo, J., construing comparable provisions in General Business Law, § 201: "... the exemption from liability in excess of the prescribed maximum is absolute where value is concealed.").

In the case at bar, plaintiff failed to disclose the value of the attache case's contents to either of the Hotel's representatives: assistant manager Baez or room clerk Tamburino. It is no answer for plaintiff to say that he mentioned a safety deposit box to Tamburino as soon as he confronted him. Plaintiff's plain duty under the statute was to advise assistant manager Baez immediately that he had a reservation; that he had valuable jewelry in his attache case; and that he wished to place the case in a safe place before proceeding any further. Had plaintiff given such advice to the assistant manager, while still holding firmly on to his case, the assistant manager—to whom such decisions are presumably entrusted—could have then decided whether or not the Hotel wished to take upon itself so significant a responsibility.

I hold that plaintiff's failure to disclose the value of his property to a Hotel representative limits whatever liability the Hotel may have to the statutory amount of $500.

Plaintiff professes to find comfort in the two most recent New York Court of Appeals decisions on point: *Goncalves, supra,* and *Zaldin v. Concord Hotel,* 48 N.Y.2d 107, 421 N.Y.S.2d 858, 397 N.E.2d 370 (1979). These cases are inapposite. *Zaldin* holds that where a hotel did not allow guests access to its vault between the hours of 11:00 p.m. and 8:00 a.m., it could not limit its liability under the statute in respect of jewelry stolen from a guest's room during those particular hours. That holding is the foreseeable consequence of the hotel's failure to "provide" a safe at all times. It has nothing to do with the case at bar.

*Goncalves, supra,* involved the question of whether the defendant hotel's safe was physically sufficiently secure to qualify the hotel for the protection of the statute. The Court of Appeals held that summary judgment should not have been granted limiting defendant's liability to $500, in the light of an expert witness's affidavit that "defendant's facilities were inadequate, stating that safe-deposit boxes can be invaded in less than 30 seconds and that they should

be housed in a vault, not a room of plaster-board and wooden doors." 58 N.Y.2d at 219, 460 N.Y.S.2d at 757, 447 N.E.2d at 700. This holding is equally inapposite to the case at bar. The general statements contained in the opinions, which the present plaintiff removes from context in order to rely upon them, do not change the conclusion which I have reached.

That is equally true of a sentence which the plaintiff isolates from *Rosenplaenter v. Roessle, supra.* The opinion in that case, in the process of distinguishing earlier authority, observes: "There must be a brief period after the arrival of a guest at a hotel before he can make the deposit, and during this brief period the statute affords the hotel keeper no protection." 54 N.Y. at 267. That sentence, the present plaintiff suggests, creates a "window of vulnerability" through which he may affix unlimited liability upon the Waldorf. I do not agree. The quoted sentence from *Rosenplaenter* is dictum, and quite unnecessary to the result reached in the case, as the Court of Appeals had occasion to observe in *Zaldin, supra,* at 48 N.Y.2d 114, 421 N.Y.S.2d 862, 397 N.E.2d 374. Furthermore, the present plaintiff, having delivered his three suitcases into the hands of the Hotel staff, crossed the lobby, confronted assistant manager Baez behind the latter's desk, and identified himself as a guest with a reservation, had placed himself in a position where he could (and should) have made the required declaration and deposit. To the extent that the dictum in *Rosenplaenter v. Roessle* gives rise to a "window of vulnerability," that window had closed before the theft of plaintiff's property occurred.

### III.

Because the most that plaintiff can recover in this action is $500, it is evident that the amount in controversy does not exceed $10,000. In consequence, federal subject matter jurisdiction in this diversity action is lacking. 28 U.S.C. § 1332(a); *Salisbury v. St. Regis-Sheraton Hotel Corp.,* 490 F.Supp. 449, 451 (S.D.N.Y.1980).

The Clerk of the Court is directed to dismiss the complaint without prejudice and without costs. I intimate no view on questions of negligence.

It is SO ORDERED.