■ HANOVER INSURANCE COMPANY, Respondent, v JAMES P. CORCORAN, as Superintendent of Insurance of the State of New York, et al., Appellants.—Order and judgment (one paper) of the Supreme Court, New York County (William P. McCooe, J.), entered November 19, 1987, which granted the petition of Hanover Insurance Company, pursuant to CPLR article 78, to annul the determination of the Superintendent of Insurance, which compelled petitioner Hanover to accept an assignment to write a motor vehicle liability insurance policy from the Assigned Risk Plan, is unanimously reversed, on the law, the petition denied and dismissed, and the determination of the Superintendent of Insurance reinstated, without costs.

In 1946, the Legislature enacted section 63 of the Insurance Law, the predecessor of Insurance Law § 5301 et seq., thereby establishing the Assigned Risk Plan (the Plan), pursuant to which all insurers licensed to write motor vehicle liability insurance policies in this State became obligated to participate in the Plan for the equitable apportionment among them of motor vehicle insurance policies to applicants who cannot acquire such on the open market. The statute authorized the Superintendent of Insurance to promulgate a plan or plans for the apportionment of assignments after consultation with insurance industry representatives. The limits and types of coverage were to be determined at the reasonable discretion of the Superintendent of Insurance, subject to approval by the Insurance Department. Section 63, itself, set no standards on types and limits of coverage.

In 1969, section 63 was amended and its provisions recodified and amplified into what are now sections 5301 through 5304. Presently, the Plan is administered by a governing committee made up of members of the insurance industry and subject to the direction and supervision of the Superintendent of Insurance. (Insurance Law §§ 5301, 5302.) The committee operates pursuant to a set of rules (Plan Rules) initially approved by the Superintendent, after consultation with the insurance industry, and subject to amendment by the governing committee. (Insurance Law § 5301 [b].)

Section 10 (A) of the promulgated Plan Rules, which governs the liability limits obtainable through the Plan for bodily injury and property damages, provides, in relevant part, that

"[e]ach insurer shall be required to write a policy or binder for limits of $10,000/$20,000 bodily injury liability and $5,000 property damage liability except as follows:

"1. When limits in excess of $10,000/$20,000 bodily injury liability and $5,000 property damage liability are required by law, *the insurer shall be required to write a policy or binder for limits adequate to comply with the law"* (emphasis supplied).

Since 1954, section 10 (A) of the Plan Rules has provided that insurers shall be obliged to write policies exceeding the basic $10,000/$20,000 limits when necessary to comply with the minimum requirements of law.

This Plan Rule is now being challenged as inconsistent with one of the successor provisions to Insurance Law § 63, which became effective in 1969 and provide that the Assigned Risk Plan

"(a) * * * shall provide for availability to applicants of motor vehicle insurance coverages for:

"(1) legal liability, up to fifty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, up to one hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and up to ten thousand dollars because of injury to or destruction of property of others in any one accident" (Insurance Law § 5303 [a] [1]).

The question before us is whether section 5303 establishes a ceiling limit on the coverage which an assigned risk insurer must extend to an assigned risk applicant, and if so, whether this invalidates the provision of section 10 (A) of the Plan Rules which requires higher amounts of coverage when required by law. The issue arises in the context of the April 28, 1986 decision of the Superintendent of Insurance, which approved and adopted the findings and conclusions of a Hearing Officer of the Department of Insurance, directing petitioner Hanover Insurance Company to accept a Plan assignment of a risk applicant, a school bus company which is required by the Interstate Commerce Commission to have a minimum liability coverage of $5 million per vehicle.

We conclude that it would be contrary to the legislative intent in enacting section 5303 to construe it as establishing a $50,000/$100,000 ceiling limit upon coverage. We do not dis-

pute that the statute is ambiguously worded. Because it is, we must, therefore, be guided by the Legislature's intent, the history of the predecessor statute and, additionally, by what is a reasonable interpretation of the statute. So guided, we hold that the liability coverage provisions set forth in section 5303 were included by the Legislature to assure that assigned risk motorists would be guaranteed coverage *at least* as high as $50,000/$100,000, upon their request. Further, the requirement of section 10 (A) of the Plan Rules, that the insurer provide amounts in excess of $10,000/$20,000, *when required by law,* is not in conflict with the statute and, in fact, addresses a quite different concern.

The statement made by the Court of Appeals in *Zaldin v Concord Hotel* (48 NY2d 107, 111), albeit with reference to a different statute, is particularly relevant herein with a minor change: "Like most statutes, section [5303] did not spring full blown out of a void." In interpreting what the Legislature intended in enacting section 5303 we cannot ignore the history of the predecessor statute and the manner in which the Legislature intended and specified that the Assigned Risk Plan operate. As stated *ante,* the predecessor statute, a one-section statute, authorized establishment of the Plan and delegated to the Superintendent of Insurance the authority to promulgate reasonable rules by which to govern the Plan. Pursuant to this authority, a comprehensive system of Plan Rules was promulgated, specifying, among other things, limits and types of coverage the Plan would provide, the eligibility requirements for an assignment, the procedures for obtaining an assignment, and the method of determining the quota of assignments each insurer would be required to fulfill. The Plan, therefore, has always operated with minimal legislative direction.

However, in its 1968 calendar year report, the office of the Superintendent of Insurance recommended to the State Legislature that it amend former section 63 to provide that assigned insurers be statutorily required to write limits in excess of the then-compulsory $10,000/$20,000 limits required by the Vehicle and Traffic Law when excess coverage was desired and needed by the motorists. In 1969, when the Legislature modified section 63, it did for the first time specify coverage provisions, requiring, as set forth *ante,* that insurers shall provide coverage "up to" $50,000/$100,000.

The legislative memorandum to Laws of 1969 (ch 189) clearly demonstrates that, consistent with the Superintendent's recommendations, the intent of the amended law was to

permit expanded coverage at the option of the assigned risk motorist, who unlike motorists in the voluntary market faced difficulty securing coverage in excess of the then-compulsory minimum of $10,000/$20,000. (Mem of State Exec Dept on L 1969, ch 189, 1969 McKinney's Session Laws of NY, at 2393-2394.) In his memorandum approving Laws of 1969 (ch 189), then Governor Rockefeller commended the fact that "the bill will increase five-fold the amounts of automobile liability insurance which motorists may obtain through the Automobile Assigned Risk Plan and will make physical damage and medical payments coverage available through the Plan for the first time. These additional coverages are optional with the motorist. Many drivers want and need additional liability and other auto insurance, but those in the Assigned Risk Plan have, until now, been virtually unable to secure such coverage. Under the bill, New York will now offer broader auto insurance coverages through its Assigned Risk Plan than any other state." (Mem of Gov Rockefeller on L 1969, ch 189, 1969 McKinney's Session Laws of NY, at 2543-2544.)

The reasonable interpretation of these statements is that what the Legislature intended by enactment of Laws of 1969 (ch 189) was to establish a mandatory minimum, not ceiling, of liability amounts that, if requested by the assigned applicant, had to be provided by the Plan as a matter of State law. It is noteworthy that the statute does not state that *only* "up to" $50,000/$100,000 could be provided. Without such an explicit limitation, we interpret section 5303, consistently with its legislative intendment, as requiring that *at least* "up to" $50,000/$100,000 must be provided at the option of the motorist. We further note that not only does section 5303 establish a minimum as opposed to a ceiling limit to amounts desired and requested by the assigned motorist, but the provisions of section 5303 have no effect on the requirement of section 10 (A) of the Plan Rules obligating the assigned insurers to write policies for higher than $10,000/$20,000 when some particular statute requires that a motorist have expanded coverage.

This challenged provision of section 10 (A) of the Plan Rules has been in existence since 1954, and we must presume that when the Legislature enacted Insurance Law § 63 (2) (present § 5303) in 1969, it did so with knowledge of the Plan Rules including section 10 (A). This is especially so since the Legislature has authorized the Superintendent to govern the Plan by promulgation of Plan Rules. Except for the small but significant matter of having guaranteed a minimum amount of expanded coverage at the motorist's option, section 5303 does

not alter the Legislature's scheme of authorizing the Superintendent to promulgate those rules which are reasonable and necessary, and in accord with the statutorily established procedure, to govern the Plan and protect motorists and the public at large. Obligating assigned insurers to provide expanded coverage when *required by law* presents a different matter than requiring minimum amounts of excess coverage at the motorist's request.

Indeed, to read the statute as petitioner suggests would be contrary to public policy. If statutes exist requiring excess coverage for certain motorists or certain driving activities, as is the case here where the subject motorist is in the business of transporting school children on buses, it is no doubt because compelling circumstances require it. It would be grave error to interpret a statute, intending the narrow but important result of benefiting motorists who desired coverage in excess of the then-compulsory limits, as even applicable to, much less invalidating, a rule which requires the assigned insurer to provide excess coverage when *required by law.* The two issues address different problems and needs. While the assignment in question involves a significantly large risk, we note that the fulfillment of this insurer's quota will reflect the risk undertaken herein.

Accordingly, we reverse the order below, dismiss the petition and reinstate the determination of the Superintendent. Concur—Sandler, J. P., Sullivan, Carro, Milonas and Smith, JJ.