Gisela MOOG, Plaintiff,

v.

**HILTON HOTELS CORPORATION and The Hilton Waldorf–Astoria Corporation, Defendants.**

No. 93 Civ. 3778 (DAB).

United States District Court, S.D. New York.

April 13, 1995.

1394

Boulanger, Hicks, Stein & Churchill, New York City (J. Portis Hicks, MaryAnn Berger, of counsel), for plaintiff.

Kanterman & Taub, P.C., New York City (Bruce M. Young, of counsel), for defendants.

BATTS, District Judge.

Defendants Hilton Hotels Corporation and Hilton Waldorf–Astoria Corporation ("Hilton–Waldorf") move for summary judgment pursuant to Fed.R.Civ.P. 56(c) on all of plaintiff's claims. For the following reasons, the defendants' motion is denied in all respects.

## BACKGROUND

Plaintiff Gisela Moog ("Moog") is a German citizen who stayed at the Waldorf–Astoria hotel in New York City from November 29 to December 1, 1992. Moog arrived at the Waldorf with approximately DM[1] 615,-000 worth of jewelry, which she carried inside a Louis Vuitton bag. Upon arriving at the Waldorf, Moog placed the jewelry in the hotel's safe deposit box. Moog did not, however, fill out an inventory or identify the value of the items that she placed in the safe deposit box.

On the evening of November 30, 1992, Moog accompanied some friends to the opera. Prior to leaving the hotel, Moog retrieved a ruby necklace, five bracelets, two rings, a watch, a brooch and two pair of earrings from the safe deposit box. Moog

1. Deutsche Marks.

did not return the jewelry to the hotel safe deposit box upon her return to the hotel later that evening.

The following morning Moog went to the hotel lobby to check out. Moog testified that she placed her Louis Vuitton bag with the jewelry on the floor between her legs while she was checking out of the hotel. When she looked down for her bag shortly afterward, the bag was gone. Roger Conway, a plain-clothes hotel security officer, was summoned by the front desk clerk and went to assist Moog. Conway and Moog returned to Moog's hotel room to fill out a Property Loss Report (the "Report"). Conway filled out the report; Moog has minimal command of the English language and was unable to write in English to fill out the Report. They were joined by the Lombardos, friends of Moog who were to meet her at the hotel that day. Mrs. Lombardo, fluent in German and English, helped to translate the Report for Moog. Moog signed the Report after it was translated for her.

The Report contains the following "Statement of Guest/Owner": "While waiting on checkout in lobby I put my Louie Viton [sic] large bag down beside me, waited a few minutes, looked down and bag was missing." *Id.* Conway, the security officer who filled out the Report, later testified that he was aware at the time that the "Statement" varied from Moog's original narration of events, in which she stated that she placed the bag between her legs, rather then beside her.

According to both Moog and the Lombardos, Conway urged Moog to return immediately to Germany upon learning that Moog's house keys and home safe keys were among the items in the stolen bag. Moog and the Lombardos testified that Conway expressed concern over the possibility that the thieves could be part of an "international crime ring," and could use Moog's house keys to obtain entry to her home in Dusseldorf, Germany. Consequently, with Conway's assistance, Moog was able to change her flight plans and book a return flight to Germany that day; Conway faxed a copy of his report to Lufthansa to verify the emergency. Moog

testified that Conway agreed to fill out a police report for the stolen goods. Both Moog and the Lombardos testified that Conway told Moog not to worry, and that "we [the Waldorf] will take care of everything from our side ... If your insurance doesn't pay, don't worry. The Waldorf will take care of it." (Lombardo Aff. at 23).

Conway's description of these events differed, in that he testified that Moog refused to fill out a police report and wanted to return to Germany as soon as she could. Conway also flatly denied ever promising Moog that the Waldorf would "take care of" reimbursing her for the value of the stolen goods. Conway could not recall ever promising to file a police report on Moog's behalf, although he did testify that the Waldorf would, on occasion, fill out police reports on behalf of guests. (Conway Dep. at 82–85).

An "Unusual Occurrence Report," which Conway filed later that day, states: "Because of the time of occurrence, and the amount of time before flight departure,[2] the guest *refused* to make a police report" (emphasis in original). (Def. Exh. I). A December 11, 1992 letter by Peggy Crook, claims manager for Hilton Hotels Corporation, to Ewig International Marine Corp., on behalf of Moog's insurer, describes the incident as follows:

> According to our front desk clerk ... she saw Mrs. Moog approaching the counter alone carrying a fur coat. She did not notice that she was carrying a bag. The lobby was very quiet ... There were three security officers in the lobby, two plainclothes, one uniformed, who did not see any suspicious persons at the counter nor did they see anyone leave with the bag. The lobby was not busy at all ... Mrs. Moog's loss report states that the bag was next to her. This is not what she told our security officer

.   .   .   .   .

Mrs. Moog prepared the loss report but did not notify the police due to time constraints. The hotel cannot report the loss of someone else's property. (Def. Exh. A).

Shortly after the incident occurred, Moog filed a claim with Provinzial, the insurer of the stolen jewelry. In a letter dated 2/5/93, Provinzial denied Moog's insurance claim on the grounds that Moog failed to provide "safe custody" for the bag and that Moog failed to file a police report subsequent to the loss of her bag. Susanne Arentz, the claims adjuster at Provinzial who denied Moog's insurance claim, testified that Moog's claim was denied because she failed to file personally a police report, as required by the terms of her policy, and because she failed to maintain "constant physical and eye contact" with her bag. When asked whether Moog's claim would have been processed had Hilton–Waldorf made a police report on Moog's behalf, Arentz testified that the claim would still have been denied.

On October 15, 1993, Moog filed this diversity action against Hilton–Waldorf, claiming (1) defendants were negligent in failing to provide reasonable security at the hotel, (2) defendants breached their promise to file a police report on Moog's behalf, leading to the denial of her insurance claim, (3) defendants filed an inaccurate incident report and transmitted it to Provinzial, leading to the denial of Moog's claim, (4) defendants' letter of December 11, 1992, which was sent to Provinzial, contained a false and erroneous description of events and led to the denial of Moog's insurance claim and (5) defendants breached their promise, made by security officer Conway on the day of the theft, to reimburse plaintiff for her loss.

Moog has also brought an action against Provinzial in Germany for breach of the insurance agreement. Pursuant to German law, which requires the insured to mitigate

---

**2.** Moog's original return flight to Germany was not scheduled to depart for several more days. Moog, however, changed her return flight to Tuesday, the day of the theft, after Conway told her "to take the first flight back to Germany" and placed a call to Lufthansa on her behalf. (E. Lombardo Dep. at 19, 21; J. Lombardo Dep. at 40). Conway told Moog that her apartment in Germany should not be left unattended since

identification listing her address and the keys to her safe were in the stolen bag. (E. Lombardo Dep. at 18–22; J. Lombardo Dep. at 40). He further frightened Moog by stating "Oh my God. [The thieves] could have been a foreign or international gang and you better get back to Germany as quickly as possible." (J. Lombardo Dep. at 40).

losses by attempting to recover against those responsible for the loss before pursuing a claim against the insurer, the action against Provinzial in Germany has been stayed while Moog pursues her cause of action against Hilton–Waldorf in this court.

Hilton–Waldorf now moves for summary judgment on all of Moog's claims.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), the court may grant summary judgment if, viewing all the pleadings, depositions, answers to interrogatories, affidavits and admissions on file in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to prevail as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). The burden is on the moving party to demonstrate that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services,* 22 F.3d at 1223. Consequently, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Id.* Summary judgment may be appropriate, however, if the moving party can show that little or no evidence may be found in support of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2553; *Gallo v. Prudential Residential Services,* 22 F.3d at 1224. Summary judgment may also be appropriate if no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services,* 22 F.3d at 1224.

## I.

■ Moog's first claim for relief is that Hilton–Waldorf was negligent in failing to provide reasonable security at the Waldorf–Astoria Hotel. Hilton–Waldorf argues that liability under this claim is precluded by New York General Business Law § 200 (McKinney's 1988), entitled "Safes; limited liability".[3]

In essence, § 200 provides that as long as a hotel proprietor provides a safe deposit box for the storage of valuables and posts conspicuous notice that a safe deposit box is available, a hotel guest who fails to use the safe deposit box cannot hold the hotel responsible if his or her valuables are later lost or stolen. *See Zaldin v. Concord Hotel,* 48 N.Y.2d 107, 421 N.Y.S.2d 858, 860, 397 N.E.2d 370, 371 (1979). Alternatively, if the hotel guest avails himself or herself of the safe deposit box, the hotel proprietor shall not be liable for any loss sustained by the guest in excess of $1,500 unless otherwise agreed.

The first question here is whether N.Y. General Business Law § 200 was intended to apply to the instant claim, which concerns alleged acts of negligence on the part of Hilton–Waldorf during Moog's check-out from the hotel. N.Y. General Business Law § 200 was intended to circumscribe an innkeeper's absolute liability at common law for the loss or theft of a guest's valuables while on the innkeeper's premises. *Zaldin v. Con-*

---

**3.** Whenever the proprietor or manager of any hotel, motel, inn ... shall provide a safe or safe deposit boxes in the office of such hotel, motel, inn ... or other convenient place for the safe keeping of any money, jewels, ornaments, ... or precious stones, belonging to the guests of or travelers in such hotel, motel, inn ... and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe or safe deposit boxes are provided, in which such property may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel, motel or inn ... and if such guest or traveler shall neglect to deliver such property, to the person in charge of such office for deposit in such safe or safe deposit boxes, the proprietor or

manager of such hotel ... shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise; but no hotel ... proprietor or lessee shall be obliged to receive property on deposit for safekeeping, exceeding one thousand five hundred dollars in value; and if such guest or traveler shall deliver such property, to the person in charge of such office for deposit in such safe or safe deposit boxes, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise, in any sum exceeding the sum of one thousand five hundred dollars unless by special agreement in writing with such proprietor, manager or lessee. New York General Business Law § 200 (McKinney's 1988).

cord Hotel, 421 N.Y.S.2d at 860, 397 N.E.2d at 371; *De Lema v. Waldorf Astoria Hotel, Inc.,* 588 F.Supp. 19, 21 (S.D.N.Y.1984). While § 200 was designed with an innkeeper's absolute liability at common law in mind, it contains no exception for property lost or stolen as a result of the innkeeper's negligence. Consequently, most courts interpreting this provision have found that its limitation of liability applies even where the substance of the claim is not absolute liability, but negligence. *Goncalves v. Regent International Hotels, Ltd.,* 58 N.Y.2d 206, 460 N.Y.S.2d 750, 754, 447 N.E.2d 693, 696 (1983); *Spiller v. Barclay Hotel,* 68 Misc.2d 400, 327 N.Y.S.2d 426, 428 (1972); *Adler v. Savoy Plaza,* 279 A.D. 110, 108 N.Y.S.2d 80 (1st Dept.1951).

Thus, Moog's first claim falls within the purview of N.Y. General Business Law § 200. This conclusion is not altered by the fact that Hilton–Waldorf's alleged negligence occurred as Moog was preparing to leave the hotel. The statute's limitation of liability applies through the duration of the hotel-guest relationship contemplated by its provisions. *Salisbury v. St. Regis–Sheraton Hotel Corp.,* 490 F.Supp. 449, 451 (S.D.N.Y.1980). Moog's status as a "guest" of the Hilton–Waldorf was not automatically terminated by her check-out, but continued for a reasonable period of time thereafter while she remained on the hotel premises. *Id.* at 451 (guest is "a transient person who resorts to or is received at an inn for the purpose of obtaining the accommodations which it purports to offer.")

■ It is undisputed that the Waldorf had safe deposit boxes on the premises and that Moog used a safe deposit box for the stolen jewelry up until the night before her departure. While Moog claims that the value of the stolen jewelry exceeded DM 615,000, or approximately $400,000 at current exchange rates, she failed to inform any employee of the Waldorf at the time she used the safe deposit box, or thereafter, of the value of the contents she deposited, and consequently never entered into the kind of written agreement contemplated by the last sentence of N.Y. General Business Law § 200. Therefore, according to the provisions of the limited liability statute, the most Moog could hope to recover for this claim would be $1,500.00.

■ However, because N.Y. General Business Law § 200 was enacted in derogation of the common law rule of absolute liability for innkeepers, it must be strictly construed. *Latini v. Loews Corp.,* 657 F.Supp. 475, 476 (S.D.N.Y.1987); *Goncalves v. Regent International Hotels, Ltd.,* 460 N.Y.S.2d at 755, 447 N.E.2d at 697. The protection against liability that it affords will not be granted unless all of its provisions, including the requirement of conspicuous posting of notice, are complied with. *Insurance Co. of North America v. Holiday Inns of America, Inc.,* 40 A.D.2d 885, 337 N.Y.S.2d 68, 70 (3d Dept. 1972). While Moog was aware of the Waldorf's safe deposit boxes, she claims that she was never apprised of the hotel's limited liability. She points to evidence that the Waldorf's notices of limited liability are posted in non-conspicuous areas in small, hard-to-read print. Moog also argues that, while a significant number of foreign visitors to the United States are German, the Waldorf's notices of limited liability are provided in English, French, Spanish and Japanese—but not German.

■ This Court finds that Moog has raised a material question of fact as to whether notice of the Hilton–Waldorf's limited liability was sufficient to claim the protection of N.Y. General Business Law § 200. The affidavit of Lesley Glenn states that the only notice of limited liability in the Waldorf's lobby was posted by the room key drop-off desk, where guests would see it only after their stay was completed. Moreover, Glenn noted that the posted liability notices on the seventh floor of the hotel, where Moog's room was located, were placed in a recessed doorway across from the elevators, where they could not readily be seen by guests. Thus, regardless of what language they were in, the limited liability notices appear not to have been readily visible to patrons using the safe deposit boxes. Such allegations are sufficient to raise questions of fact precluding summary judgment on this claim. *See Latini v. Loews Corp.,* 657 F.Supp. at 476 (question of fact existed where vase of flowers may have obstructed guests view of limited

liability sign); *Insurance Co. of North America v. Holiday Inns of America, Inc.,* 40 A.D.2d 885, 337 N.Y.S.2d at 70 (posting requirements of § 200 not satisfied where notices not posted in public rooms of motel); *DePaemelaere v. Davis,* 77 Misc.2d 1, 351 N.Y.S.2d 808, 811–12 (1973) (two notices which were not in the guest's line of vision were insufficient to effect § 200's limitation on liability), *aff'd* 79 Misc.2d 800, 363 N.Y.S.2d 323 (1st Dept.1974).

## II.

Moog's second through fifth claims, *supra,* concern events subsequent to her departure from the Waldorf. Hilton–Waldorf argues, first, that N.Y. General Business Law § 200 precludes these claims, second, that Hilton–Waldorf cannot be bound by any promises made by security officer Conway, and third, that Hilton–Waldorf owed no duties to Moog.

■ This Court concludes that the operative facts of Moog's second, third and fourth claims are beyond the scope of General Business Law § 200. That statute applies, by its terms, to liability arising from the loss or theft of a guest's property while on hotel premises. The claims under consideration here, however, are premised not on the loss or theft of Moog's jewelry, but on her insurer's refusal to provide coverage for the stolen items. In other words, she claims that the Hilton–Waldorf's failure to file a police report and to provide accurate information to her insurer led directly to the denial of her insurance claim. This claim is sufficiently distinct from the intended application of General Business Law § 200 so as to be entirely beyond the reach of its limited liability provisions. *See Spiller v. Barclay Hotel,* 68 Misc.2d 400, 327 N.Y.S.2d 426, 428 (1972) (negligence claim arising after guest had checked out and had ordered property brought to waiting car was not within the scope of N.Y. General Business Law § 200).

Looking specifically at Moog's second cause of action, her theory of recovery rests, in part, upon the assumption that security officer Conway's alleged promise to fill out a police report was binding on the Hilton–Waldorf. In the absence of any evidence that Conway was actually authorized to file the police report on Moog's behalf, the Hilton–Waldorf may have created the false impression that Conway was empowered to do so through its security procedures, under which Conway was the sole hotel representative with whom Moog spoke after the theft.

■ Under New York agency law, a principal may not be bound by the actions of its agent in the absence of express authority delegated to the agent by the principal, unless, by its actions, the principal creates in a third party the impression that its agent is authorized to act on its behalf. *Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 624 (2d Cir.1989); *Herbert Construction Co. v. Continental Insurance Co.,* 931 F.2d 989, 993–94 (2d Cir.1991). The existence of apparent authority is a question of fact. *Herbert Construction Co. v. Continental Insurance Co.,* 931 F.2d at 994; *Matter of Arbitration Between Herlofson Management A/S and Ministry of Supply, Kingdom of Jordan,* 765 F.Supp. 78, 88 (S.D.N.Y.1991). If words or conduct of the principal, communicated to a third party, give rise to a reasonable belief on the part of the third party that the agent has authority to act in a particular transaction, apparent authority has been created. *See E.F. Hutton Group, Inc. v. United States Postal Service,* 723 F.Supp. 951, 959 (S.D.N.Y.1989).

■ Apparent authority must be found in the words, acts or omissions of the principal; an agent cannot imbue herself with apparent authority. *Aries Ventures Ltd. v. Axa Finance, S.A.,* 729 F.Supp. 289, 300 (S.D.N.Y.1990) (citing *In re Sterling Navigation Co.,* 444 F.Supp. 1043 (S.D.N.Y.1977)); *see also Itel Containers International Corp. v. Atlanttrafik Express Service Ltd.,* 909 F.2d 698, 703 (2d Cir.1990). If the third party, because of the misleading conduct of the principal, reasonably believes that the agent had authority to act, the principal will be bound by the conduct of the agent. *Doxsee Sea Clam Co. v. Brown,* 13 F.3d 550, 554 (2d Cir.1994).

■ Conway was the only representative of the Waldorf who spoke with Moog after the theft. He did not identify his official position at the Waldorf to Moog, nor did he

carry any external indicia of his rank, such as a badge or photo identification. According to James G. Lombardo, when asked about the police report, Conway replied "I'll take care of that." (J. Lombardo Dep. at 41). The hotel did nothing to disabuse Moog of this notion. The Waldorf–Astoria's inaction, along with Conway's warnings and assurances, deterred Moog from filing the police report herself. Based on these facts, a reasonable jury could find that the Waldorf cloaked its agent in apparent authority to file the report on Moog's behalf, and is therefore estopped from denying Conway's authority to bind Defendant to act with reasonable care in filing the report.[4] Thus, there are material issues of fact which preclude the granting of summary judgment.

■ Likewise, Moog's fifth cause of action, which is premised on Conway's ability to bind the defendant with his promise to reimburse Moog, cannot be dismissed at this time. Moog's claim refers to statements allegedly made by Conway subsequent to the theft. According to Eve Krutz–Lombardo, who witnessed the exchange, Conway said: "Report [the theft] to your insurance. We will take care of everything from our side, from here. If your insurance doesn't pay, don't worry. The Waldorf will take care of it. And don't worry about a thing. Just get on the plane and get as fast as possible home." (E. Lombardo Dep. at 23). As with the second cause of action, Hilton–Waldorf requests summary judgment on the grounds that, even if this statement were made, security officer Conway had neither actual nor apparent authority to bind Hilton–Waldorf to any such promise.

For many of the reasons stated above, this Court cannot conclude, as a matter of law, that Conway lacked apparent authority to bind Hilton–Waldorf to reimburse Moog for the theft of her jewelry. In addition, as indicated in the "Unusual Occurrence Report" which he filled out later that day, Conway offered to pay Moog's carfare from the Waldorf to JFK International Airport, an offer which Moog accepted. While the offer to reimburse Moog for the theft of several hundred thousand dollars worth of jewelry differs substantially from an offer to pay for her carfare to Queens, Moog clearly believed that Conway was authorized to deal with her and with the consequences of her theft. Because this belief may have flowed, at least in part, from the procedures established by the Hilton–Waldorf, summary judgment on this claim is inappropriate.

■ Nor can Moog's third and fourth claims, resting on Hilton–Waldorf's alleged duty to provide Moog's insurer with accurate information in the Report and a subsequent letter, be dismissed at this stage. Security officer Conway testified that, although Moog initially said her bag was placed between her legs when it was stolen, when he filled out the Report she claimed that the bag was beside her at the time of the theft. A letter to Moog's insurer dated December 11, 1992, notes the inconsistency in these accounts but offers no explanation. The December letter then states, inexplicably, that "the hotel cannot report the loss of someone else's property." This flatly contradicts Conway's testimony that the Waldorf occasionally would fill out police reports on behalf of guests.

These inconsistencies, coupled with Conway's statement that he never spoke with Peggy Crook about this occurrence, create a question of fact as to whether the Hilton–Waldorf exerted reasonable diligence in investigating the situation prior to reporting this incident to Moog's insurer. Because such a failure to exercise reasonable diligence would suggest that Hilton–Waldorf did not exercise its duty of reasonable care, summary judgment cannot be granted on these claims.

■ Hilton–Waldorf offers testimony by Susanne Arentz[5], the Provinzial claims adjuster who denied Moog's claim, to the effect that even had the Hilton–Waldorf acted in compliance with its duties as alleged by

---

4. By agreeing to file the police report, Conway assumed a duty of care which was clearly not fulfilled. *See Spiller,* 327 N.Y.S.2d at 427 (bellboy assumed an obligation of care when he agreed to watch plaintiff's bags).

5. Hilton–Waldorf has not proffered any legal authority.

Moog, Moog's claim would still be denied. (Def. Exh. O). Arentz points to provisions in Moog's insurance contract which, she claims, require (1) that a police report for stolen goods be filed by the insured personally and not by an agent and (2) that the insured maintain constant eye and physical contact with the insured goods.

The question of whether Provinzial would have denied Moog's claim, had the facts been otherwise and defendants acted in accordance with their duties as alleged by Moog, goes toward the causation prong of Moog's claim, specifically the element of cause-in-fact. This causation issue rests upon the determination of two sub-issues. The first is whether German law would require the policyholder under this contract to file personally a police report, rather than acting through an agent. The question is one of law and may be decided on summary judgment. The Court finds that Moog has presented considerable evidence, including translations of German insurance law and Provinzial's insurance contract with German insurance law, tending to show that Arentz's interpretation of Moog's contract is incorrect. According to a German lawyer, Christoph Bellstedt, Provinzial's contract merely requires that a police report be filed, not that it be filed personally by the policyholder. (Bellstedt Dec. at 2). As the lawyer points out, a requirement that the policyholder personally file a report would work an injustice in many instances, such as where an insured is killed or severely injured in the theft. (Bellstedt Dec. at 3). This Court finds, as a matter of law, that Moog's insurance claim would not have been denied solely for her failure to file personally a police report, thereby rendering summary judgment inappropriate.

█ The second issue under the causation prong is whether Moog complied with the terms of the policy regarding the handling and supervision of the insured items. Sections 5.1, 5.1.1 and 5.1.2 of the policy state:

> Coverage is provided so long as the insured items are worn by Policyholder or a member of the family of said Policyholder living in the same household, and are worn in an appropriate manner, or are kept secure in personal custody—jewelry in a safe container—and carried along in transit, or so long as the items are kept in a solid building, jewelry kept safely locked up....

This issue presents a question of fact for the jury. The facts are substantially in dispute regarding whether Moog placed the bag on the floor between her feet or at her side. The conflicting reports raise genuine issues of material fact that preclude granting summary judgment on the issue.

█ While summary judgment on Moog's second, third and fourth claims may be inappropriate, Hilton–Waldorf argues that a stay of any further action on these claims should be granted pending the outcome of Moog's simultaneous proceeding in Germany against her insurer, Provinzial. As the United States Supreme Court has held:

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *see also Rodgers v. United States Steel Corp.*, 508 F.2d 152, 162 (3d Cir.1975). Under these facts, this Court concludes that a stay of the proceedings against Hilton–Waldorf is not justified. At present, Moog's proceeding against Provinzial in Germany is stayed pending the outcome of this action. To grant a stay in this proceeding as well would create the awkward result of lawsuits in two countries being stayed simultaneously while each court waits for the other to render a decision. Such a result would not accomplish the goals of judicial economy of time and effort.

## CONCLUSION

For all the above reasons, defendant's motion for summary judgment is denied on all claims.

It is so ordered.