OPINION OF THE COURT
Chief Judge Cooke.
A hotel will not be availed of limited liability provided by section 200 of the General Business Law for the loss or destruction of a guest’s property delivered to it for safekeeping unless the hotel establishes that it provided a “safe” within the meaning of that section. The hotel may be charged with its failure to provide an adequate facility.
Plaintiffs in these two consolidated cases were guests in late November, 1979, at the Mayfair Regent, a Manhattan luxury hotel owned and operated by defendants. Each plaintiff was traveling with an extensive jewelry collection allegedly worth $1,000,000. As required by law, notices were posted in the hotel that a safe was available in the office for the secure storage of money, jewels, and other valuable items. Plaintiffs each delivered their jewelry over to the management for deposit. In doing so, they signed a “Safe Deposit Box Receipt” which set forth certain terms and conditions.[1]
*212 The security device provided by defendants consisted primarily of rows of safe-deposit boxes that required two keys — one held by the guest — to open. The safe-deposit boxes were housed in a room built of plasterboard with access controlled only by two hollow-core wood doors, one of which had an ordinary residential tumbler lock and the second of which had no lock at all. Plaintiffs claim that this room was unlocked, unattended, and open to the general public. Also, it is alleged that the card file, showing which guest was using each box and when property had been deposited and removed, was exposed to public scrutiny.
On November 25, 1979, thieves entered the hotel and broke into a limited number of safe-deposit boxes, including those used by plaintiffs. The boxes were emptied of their valuables.
Plaintiffs independently commenced these actions to recover for the theft of their jewelry. Plaintiff Goncalves stated four theories for relief in her third amended complaint: (1) gross negligence in providing security; (2) breach of contract by defendants’ failure to fulfill an earlier promise to install a secure area for their safe-deposit boxes; (3) breach of duty as a bailee; and (4) breach of section 200 of the General Business Law by defendants’ failure to provide a safe as required by that statute. Plaintiff Cecconi relied on two theories: (1) breach of duty as a bailee; and (2) negligence in providing security. Each plaintiff prayed for damages in the amount of $1,000,000.
Defendants denied plaintiffs’ allegations and raised three affirmative defenses in their answers. First, they relied on section 200 of the General Business Law as limiting plaintiffs’ recovery to $500. Defendants also claimed breaches of the safe-deposit agreements occasioned by plaintiffs’ deposit of goods worth more than $500. Last, defendants relied on the agreement to limit their liability to $500.
*213 The two actions were consolidated and defendants moved to dismiss the complaints or, in the alternative, have judgment entered against them in the amount of $500. Plaintiffs cross-moved to strike defendants’ affirmative defenses and for summary judgment. Special Term directed entry of judgment of $500 against defendants in favor of each plaintiff. The cross motions to strike and for summary judgment were denied. The Appellate Division unanimously affirmed. This court granted leave to appeal (57 NY2d 601). The order below is now modified.
The centerpiece of this appeal is section 200 of the General Business Law, which places a limitation on the absolute liability for the loss or destruction of a guest’s property to which a hotelkeeper was subject at common law. That statute provides:
“§200. Safes; limited liability
“Whenever the proprietor or manager of any hotel, motel, inn or steamboat shall provide a safe in the office of such hotel, motel or steamboat, or other convenient place for the safe keeping of any money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones, belonging to the guests of or travelers in such hotel, motel, inn or steamboat, and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided, in which such property may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel, motel, or inn, or saloon of such steamboat; and if such guest or traveler shall neglect to deliver such property, to the person in charge of such office for deposit in such safe, the proprietor or manager of such hotel, motel, or steamboat shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise; but no hotel, motel or steamboat proprietor, manager or lessee shall be obliged to receive property on deposit for safe keeping, exceeding five hundred dollars in value; and if such guest or traveler shall deliver such property, to the person in charge of such office for deposit in such safe, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise, in any sum exceeding the sum of five hundred *214 dollars unless by special agreement in writing with such proprietor, manager or lessee.”
Several issues requiring the explication of section 200 are raised. Plaintiffs argue that the statute limits absolute liability only, but does not exonerate a hotelkeeper whose negligence is the proximate cause of the loss of the goods delivered for safekeeping. Alternatively, plaintiffs propose thát a hotelkeeper who does not provide a “safe” within the meaning of the statute may not claim the benefits of section 200. Defendants argue that section 200 limits their liability no matter what the cause of loss and that they provided a “safe” as required. Defendants further posit that the statute does not require a safe, but that “[an]other convenient place” will satisfy the conditions for invoking the section.
At common law, an innkeeper was an insurer of goods delivered into his or her custody by a guest, and so was absolutely liable for the loss or destruction of such goods “unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy.” (See Hulett v Swift, 33 NY 571, 572.) The practical root of this rule lay in the days when travel was perilous, highway robbers abounded, and the only safe sanctuary at night usually was an inn (see Hulett v Swift, supra, at pp 572-573; Browne, Bailments [1896], pp 81-83; Edwards, Bailments [2d ed, 1878], § 462, pp 335-336; Schouler, Bailments [3d ed, 1897], § 274, pp 276-278; 43A CJS, Inns, Hotels, and Eating Places, § 36, p 880; 9 ALR2d 818). The obligation encompassed not only goods actually delivered into the innkeeper’s possession, but also property in the guest’s room (see Ramaley v Leland, 43 NY 539; cf. Bendetson v French, 46 NY 266). “Undoubtedly an innkeeper, by the common law, is held responsible, in this capacity of exercising a public vocation, for whatever personal property of the guest the latter may have brought infra hospitium. Not only the guest’s animals and private equipage may thus claim protection, his wearing apparel and personal jewelry, his baggage and travel-ling necessaries, but, indeed, money and valuables to an unlimited amount.” (Schouler, Bailments [3d ed, 1897], § 283, p 288.)
*215 The common-law rule placed a heavy burden on the hotelkeeper, who could be held liable for a guest’s loss although not having any culpability for the property’s theft or destruction (see Edwards, Bailments [2d ed, 1878], § 463, pp 336-337; see, also, Browne, Bailments [1896], pp 83-84; 2B Warren’s Negligence [3d ed], Hotelkeepers, § 5.01). The New York Legislature early acted to restrict the innkeeper’s exposure by providing a statutory exception to the common-law rule. In 1855, the predecessor statute to section 200 of the General Business Law was enacted (L 1855, ch 421, § 1). Another law limiting the innkeeper’s liability for loss by fire came into being 11 years later (L 1866, ch 658; see, also, General Business Law, § 202). And the Legislature also limited the innkeeper’s financial responsibility for guests’ property such as clothing and other items that could not be expected to be placed in a safe (L 1883, ch 227, § 2; see, also, General Business Law, § 201).
Being in derogation of the common law, section 200 is to be strictly construed (see Ramaley v Leland, 43 NY 539, 541, supra). Moreover, to obtain its protection, the hotel-keeper must strictly adhere to its provisions (see Millhiser v Beau Site Co., 251 NY 290, 295-296 [limitation not available when innkeeper’s posted notices do not include information about limitation on liability]; see, also, Zaldin v Concord Hotel, 48 NY2d 107, 113-114).
Given this statutory framework, negligence by the hotelkeeper may arise in two ways. First, the hotelkeeper may be negligent in such a way that he or she fails to satisfy the conditions of the statute. Second, the hotel-keeper may fulfill the statute’s conditions, but by some other negligent act cause the loss of property. The former may be charged against the hotelkeeper and the benefits of section 200 denied, but the latter does not remove the protection of the limited liability accorded to the hotel-keeper by the statute.
Assuming that the proprietor meets the requirements of section 200, the statutory scheme limits his or her liability for general negligence. The terms of section 200 make no exception for loss caused by the negligence of the hotel-keeper. In contrast, sections 201 and 202 of the General *216 Business Law each limit liability unless the loss occurs through the fault or negligence of the hotelkeeper. The Legislature has maintained these distinctions for at least 100 years (compare L 1855, ch 421, § 1, with L 1866, ch 658, and with L 1883, ch 227). They should not be disturbed now.
A sound basis for the statutory distinctions can be divined. Section 200 is concerned with property — “money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones” — which items tend to have a value disproportionate to their size and are easily stored in facilities to protect them against theft or destruction. The statute’s message to hotelkeepers is clear: If you provide a facility that will protect such property against theft or destruction, then your absolute liability will be limited (unless you expressly agree to assume greater financial responsibility). This is economically sensible as well, as it encourages a hotel to initially invest in the construction of a secure receptacle, but permits long-term savings through lower insurance premiums and lower payments if losses do occur.
The premise underlying this discussion is that an adequate facility is available to the guest. Section 200 requires that the proprietor “provide a safe” as one of the conditions for receiving the protection of the statute. As recently noted in Zaldin v Concord Hotel (48 NY2d 107,113, supra), the hotel is free to determine the extent to which it “provides” a safe, but there must be strict conformity with the terms of section 200 in order to obtain the benefit of the statute. In Zaldin, it was held that a hotel could not deny access to its safe during certain hours and then claim the circumscribed liability of section 200 at all times. Analogously, a hotel that effectively fails to provide any safe at all, whether intentionally or because the receptacle is negligently constructed, also cannot claim the protection.
What, then, is a “safe” within the meaning of section 200 of the General Business Law? The Legislature has provided no definition. And while other sources provide guidance (see, e.g., Black’s Law Dictionary [5th ed], p 1199 [“(a) metal receptacle for the preservation of valuables”]; Webster’s Third New International Dictionary [un *217 abridged], p 1998 [“a metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary”]), their terms lack the perspective necessary to determining whether any particular receptacle is adequate.[2] Nor is the question one that may be answered by prescribing uniform technical specifications and measurements. A large, luxury hotel has far different security needs than a small, low-priced motel catering to a different clientele. It would be inappropriate for this court, with its lack of expertise, to specify a single safe that must be used by all hotels and motels, not only because of their varying needs but also because of the flexibility that is left to the proprietor (see Zaldin v Concord Hotel, 48 NY2d 107, 113-114, supra; see, also, Akins v Glens Falls City School Dist., 53 NY2d 325, 331).
In determining an appropriate definition of a “safe”, there must be taken into account the risks that commonly threaten the type of property covered by section 200. Fire and theft, of course, come immediately to mind. Other dangers may also exist. To come within the contemplation of section 200 of the General Business Law, therefore, a “safe” should be a receptacle that, under the circumstances, provides adequate protection against fire, theft, and other reasonably foreseeable risks. In deciding this question, all aspects of a hotel’s security system may be considered.
Section 200 is an affirmative defense (see Zaldin v Concord Hotel, supra, at p 115; Faucett v Nichols, 64 NY 377, 380; Ramaley v Leland, 43 NY 539, supra), and so the burden of proof lies on the defendant (see Faucett v Nichols, supra). Whether a “safe” was provided is a question of fact (cf. Friedman v Schindler’s Prairie House, 224 App Div 232, 236-237, affd no opn 250 NY 574 [whether establishment was “hotel” within scope of General Business Law a question of fact for jury]; Peters v Knott Corp., 191 Misc 898 *218 [adequacy of posting of notices required by General Business Law a question of fact for jury]). This, of course, does not mean that the issue must always be submitted to the jury. As with any factual issue, a Judge will make a determination on the evidence as a matter of law if there is no real controversy as to the facts (see Basso v Miller, 40 NY2d 233, 241-242; see, also, Licari v Elliott, 57 NY2d 230, 237-238; Akins v Glens Falls City School Dist., 53 NY2d 325, 332, supra).
The dissent confuses the operations of construing statutes and of applying statutes. It is agreed that declaring the meaning of a statute is solely within the province of the court, as this constitutes part of its function to enunciate the law applicable in a case. The application of the statute, however, is a different matter. When there exists conflicting evidence, determination of the controversy is left to the fact finder (see, generally, 75 Am Jur 2d, Trials, §§ 319-321; cf. Winchell v Town of Camillus, 109 App Div 341, affd no opn 190 NY 536 [error to submit interpretation of statute to jury, and undisputed defect one not within scope of statute]). The court today does no more than construe section 200 of the General Business Law by providing a standard where the Legislature has not, leaving application of that standard to the fact finder. Indeed, under the approach urged by the dissent, it would appear that all statutory rights would be removed from the fact finder’s scrutiny.[3]
*219 In the present case, it was improper to award summary-judgment. Plaintiffs submitted an affidavit by an expert having 29 years’ experience in the design, installation, and sale of safes and vaults. This witness expressed his opinion that defendants’ facilities were inadequate, stating that safe-deposit boxes can be invaded in less than 30 seconds and that they should be housed in a vault, not a room of plasterboard and wooden doors. Defendants relied on the existence and operation of the safe-deposit boxes. Under the circumstances, there exists a material issue of fact as to whether defendants’ safe-deposit boxes constituted a “safe” within the meaning of section 200.
Defendants, relying on the language in the first clause requiring “the proprietor * * * [to] provide a safe in the office * * * or other convenient place” (General Business Law, § 200), argue that a safe per se is not required by the statute. Defendants propose that this authorizes the hotel to provide a safe or another convenient place for storing valuables. This is not persuasive. Such an interpretation would allow a box or a bag kept behind the counter or a common coat closet to be interchangeable with a state-of-the-art steel vault. Clearly, this would defeat the policy underlying the statute, as discussed above. In addition, it is contrary to the long-standing comprehension that “other convenient place” refers only to the location of the safe, and not to the nature of the receptacle itself (see Edwards, Bailments [2d ed, 1878], § 467, p 341). To put it another way, the words “other convenient place”, relate to “the office”, not to the “safe”; both the “office” and the “convenient place” specify the area in which the “safe” is to be located. Finally, it is noted that the statute itself is entitled “Safes; limited liability”; it does not refer to “safes or other convenient places”. This may be taken as some indication that the Legislature intended that a safe, and nothing else, would suffice as a security device (see McKinney’s Cons Law of NY, Book 1, Statutes, § 123, subd a, p 246).
As the matter must be returned for further proceedings, the court shall address the contention that defendants should not be allowed to take advantage of the agreements *220 that were signed by the plaintiffs when they obtained the use of the safe-deposit boxes. Defendants assert that plaintiffs breached these contracts or, alternatively, that the agreements establish a maximum value of $500 for the property left in the boxes.
The enforceability of the agreements can be decided without first determining whether defendants met the requirements of section 200.[4] Assuming first that defendants did provide a “safe” within the contemplation of the statute and met the other prerequisites for obtaining the benefits of that law, there is no need to present the agreements as they are merely cumulative to the protection afforded by the statute. More important, however, is the contracts’ unenforceability under traditional precepts of contract law. The agreement recites: “In consideration of the privilege herewith granted me by mayfair house whereby I am allowed the sole use of an individual safe deposit box”. The contract is manifestly void for failure of consideration. To obtain the $500 limitation, the proprietor is required by statute to provide a safe to the guest. This statutory obligation cannot be transformed into a contractual performance, nor may the guest’s statutory right be transformed into a contractual privilege. A promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract (see Ripley v International Rys. of Cent. Amer., 8 NY2d 430, 441).
Assuming that defendants did not provide the security required by section 200, then the agreements are unenforceable as against public policy. Allowing such agreements to be enforced would encourage hotels to provide lesser protection than is required by the statute. In addition, the present agreements result in a guest’s waiver of rights without warning. Certainly, when the guest is justified in believing that the facilities are constructed to provide adequate protection against fire or theft or other reasonably foreseeable risk, the hotel should not be al *221 lowed to obtain a waiver of rights without revealing that it is actually proffering a lesser security (cf. Gross v Sweet, 49 NY2d 102, 108-110).
In summary, defendants may not invoke the protection of section 200 of the General Business Law without proving that it provided a “safe” within the meaning of that law. There exists a material question of fact as to whether defendants supplied a receptacle that, under the circumstances, provided adequate protection against fire, theft, and other reasonably foreseeable risks. The safe-deposit box receipts, signed by each plaintiff, are unenforceable agreements and so may not be relied on by defendants in their defense.
The parties’ other contentions have been considered and are found to be without merit.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiffs, by denying defendants’ motion for summary judgment and by granting plaintiffs’ cross motions to dismiss defendants’ affirmative defenses to the extent of dismissing the second and third affirmative defenses, and, as so modified, affirmed.

. The full text of the agreement reads as follows: “In consideration of the privilege herewith granted me by mayfair house whereby I am allowed the sole use of an individual safe deposit box for the keeping of my valuables and whereby I am given possession of the sole key of said box during the period of my use thereof, I hereby agree that the liability of mayfair house for loss or damage to the contents, at any time, of such safe deposit box, by theft, burglary, or otherwise, is and shall be limited at all times to a total amount of $500, and, for the purpose of determining any liability of mayfair house for any such loss or damage to the contents of such safe deposit box, I hereby agree that the value of the contents of said box shall never exceed at any one time the sum of $500.1 further agree to use this safe deposit box only for my personal property and that of my immediate family and for such a period only as I may occupy an apartment in mayfair house. As the only key to said box is herewith delivered to me, I hereby release mayfair house from any liability whatever arising from the loss of this key or the *212 presentation thereof by a person other than myself. Should the key be lost, I authorize mayfair house to have the box forcibly or otherwise opened at my expense and I agree to be present or have a duly authorized representative present when requested. It is understood that access to the box is to be allowed to me only upon my signature and upon my giving up the use of the box, I agree to return the key to mayfair house and to execute the release or receipt hereto annexed.”

. It is worth noting, however, that the term “safe” has long enjoyed a similar definition. Thus, the 1940 edition of Bouvier’s Law Dictionary defines the word as follows: “A place for keeping things in safety. Specifically, a strong and fireproof receptacle (as a movable chest of steel, etc., or a closet or vault of brickwork) for containing money, valuable papers, or the like.” A similar definition is employed in the 1900 edition of Webster’s American Dictionary of the American Language.

. Nor are the cases cited from other jurisdictions persuasive. In State v Stoner (473 SW2d 363 [Mo]), the court held that a pay telephone’s coin collection box was a “safe” for the purposes of a broad statute prohibiting the possession of burglar tools for breaking into railroad cars, boats, houses, stores, or the “door, shutter or window of a building of any kind” as well as safes. The Missouri court was not concerned with whether the receptacle was adequate to protect jewelry and papers. In Smith v Mine & Smelter Supply Co. (32 Utah 21), the court did not hold “that whether or not a facility constituted a ‘vault or safe’ within the meaning of a statute regulating the storage of explosives is a question of law.” (Dissenting opn, at p 225.) Rather, the Utah Supreme Court declared that a brick room with an unobstructed opening leaving powder caps exposed to other explosives, was not “a vault or safe such as was clearly contemplated by the ordinances.” (32 Utah, at p 26.) As indicated by the court’s reference to uncontroverted testimony (id., at p 25), the court was simply determining the factual question as a matter of law. Finally, that an Ohio court in another situation found a particular facility to be a “safe” within the meaning of another statute (see Chase Rand Corp. v Pick Hotels Corp. of Youngstown, 167 Ohio St 299) does not compel this court to do so now.

. Plaintiffs contend that the agreements are consumer contracts that are neither legible nor printed in adequately sized typeface, and so are not admissible into evidence by virtue of CPLR 4544. The record includes an affidavit by a printer establishing that the type is of an adequate size and a review of the forms reveals their legibility. The agreements are not barred from being entered into evidence on this ground.