(December 28, 1999)

■ STEPHEN WEINROTH, Appellant, v STEPHEN SWID et al., Respondents. [700 NYS2d 439] —Order, Supreme Court, New York County (Charles Ramos, J.), entered on or about April 22, 1999, denying plaintiff's cross-motion for summary judgment, partially granting defendants' motions for summary judgment to the extent of dismissing the complaint and denying defendants' motion for summary judgment on their counterclaims, unanimously modified, on the law, to deny summary judgment to defendants on plaintiff's claims against defendant Stephen Swid for unjust enrichment, breach of the Hypothecation Agreement, breach of the oral agreement, breach of the Credit Agreement and conversion; to grant plaintiff's cross-motion for summary judgment on his unjust enrichment and conversion claims against Swid to the extent of the funds remaining in the custodial account, and dismiss Swid's counterclaim for attorneys' fees; and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.

This action arises out of defendant Citibank's allegedly wrongful liquidation of securities belonging to plaintiff Stephen Weinroth and the crediting of the proceeds to defendant Stephen Swid. Weinroth had posted the securities to secure a letter of credit issued by Citibank to a company partly owned by himself and Swid.

In 1994, Weinroth, Swid and nonparty Richard Sheinberg were the principal shareholders of Vetta Sports, Inc. Weinroth's and Sheinberg's initial equity interests were slightly below 25% each, and Swid's was slightly below 50%.

Defendant Citibank issued a $1,500,000 letter of credit to Vetta in July 1994 in favor of Hong Kong & Shanghai Banking Corp., which was set to expire on January 15, 1995. At Vetta's request, at the end of 1994, the expiration date was extended to January 15, 1996.

It was anticipated that Vetta might have financial needs that could not be met out of operating capital. Accordingly, in August 1994, Vetta, Swid and Weinroth signed a Credit Agreement which required Swid and Weinroth to loan up to $2,500,000 to Vetta upon demand. Notably, the Credit Agreement did not say what percentage of the loan must be supplied by each party, though it did specify that repayment would be made to Swid and Weinroth on a 50-50 basis. However, in the second affirmative defense in Swid's amended answer, Swid refers to an alleged oral agreement among the three principal shareholders, under which each party's personal liability for liabilities of Vetta (including under the Citibank letter of credit) was to be limited to his equity interest in Vetta.

In April 1995, the credit amount on the Citibank letter of credit was increased to $2,000,000. Pursuant to Citibank's request, each of the three principal shareholders posted collateral with the bank and signed a Hypothecation Agreement. Weinroth pledged his interest in all securities held in his Preferred Custody Account (the Custodial Account).

Due to a serious illness in the summer of 1995, Weinroth contacted Swid and Sheinberg to discuss reducing his involvement in Vetta. He told Swid that he did not wish to continue to secure the Citibank letter of credit beyond its current expiration date of January 15, 1996. Weinroth alleges that Swid agreed not to extend the letter of credit without the former's permission. However, it is undisputed that Swid obtained three extensions of the letter of credit between November 1995 and February 1996 without Weinroth's knowledge or consent. Citibank relied on a corporate board resolution authorizing certain named individuals, including Swid, to transact business with the bank on Vetta's behalf. Though Weinroth was a board member, his name does not appear in the document, and he claims he was not present when it was passed.

Citibank refused to allow Weinroth to terminate the Hypothecation Agreement to the extent that any obligation of Vetta was still outstanding. Starting in March 1996, Hong Kong & Shanghai Banking Corp. made three draws on the letter of credit, totaling about $988,000. The last draw totaled $500,751.65. Vetta was obligated to repay this money to Citibank. Instead, Swid reimbursed the bank with his own cash, as a loan from himself to Vetta.

On April 25, 1996, Swid and Citibank entered into an Assignment Agreement (also apparently without Weinroth's knowledge) whereby Citibank assigned to Swid plaintiff's Hypothecation Agreement and the securities pledged thereunder,

as well as Citibank's claim to be reimbursed by Vetta for the Hong Kong bank's last $500,751.65 draw. The Agreement states that as consideration for the assignment of the Hypothecation Agreement to Swid, Swid would pay Citibank the $500,751.65.

However, Weinroth claims that Swid had already paid the money before the Assignment Agreement was executed, rendering the assignment void for lack of consideration. Specifically, in Swid's affidavit in support of his motion for summary judgment, he stated that "after I had reimbursed the bank for this draw, in addition to the two previous draws, the bank assigned to me its claims against Weinroth under the hypothecation agreement as well as the agreement itself." Swid also testified at his deposition that he "didn't pay anything" for the Hypothecation Agreement.

In April 1996, Sheinberg also transferred $120,000 to Swid from the former's custodial account. The Vetta letter of credit was finally canceled on May 15, 1996. At Swid's direction, Citibank liquidated securities worth $230,000 from Weinroth's Custodial Account in August 1996 and credited the money to Swid. Thereafter, Swid sought to liquidate an additional $242,236.63 worth of securities in Weinroth's account. Citibank asked Swid to confirm that the reimbursements Swid had already received from all sources did not exceed $500,751.65 plus interest. Swid then reduced his request to $142,236.63, and the bank complied. In August 1997, Swid requested an additional $67,218.93 from plaintiff's account. However, as this would have exceeded the total repayment to which Swid was entitled, Citibank only gave him $9,681.67. The total removed from plaintiff's account pursuant to this arrangement was $380,990.33. Approximately $360,000 remains in plaintiff's account, which Citibank has refused to release to him.

Weinroth commenced this action in November 1996, asserting claims for fraud, unjust enrichment, breach of the Hypothecation Agreement, breach of the oral agreement, breach of the Credit Agreement and conversion. He asserted that once he told Citibank he was terminating the Hypothecation Agreement in January 1996, the bank agreed that its security interest in his account continued only as to those obligations of Vetta which were "incurred and * * * outstanding as of the date of the receipt" of his termination notice. Thus, he contends, as there were no outstanding obligations of Vetta as of January 1996, the security interest expired. The assignment to Swid was therefore invalid. As discussed previously, Weinroth also contends that the assignment was invalid for lack of

consideration. In addition, he claims that he delayed giving notice of termination to the bank because he relied on Swid's misrepresentation that the letter of credit would not be extended. He also argues that he is entitled to a refund from Swid of half the funds drawn from his Custodial Account, on the grounds that Swid has allegedly admitted that the parties were to share Vetta's indebtedness on a 25%-25%-50% basis. Since Vetta's total indebtedness under the letter of credit was about $1,000,000, and Weinroth paid $380,000 of it, Weinroth seeks $130,000 from Swid so as to bring his total payout to 25% or $250,000. Finally, Weinroth seeks the return of the remaining funds in his Custodial Account, now that enough has been liquidated to satisfy the $500,751.65 debt (approximately $380,000 from plaintiff plus $120,000 from Sheinberg).

Defendants' answers denied that plaintiff could unilaterally terminate the Hypothecation Agreement, and defended Citibank's right to retain plaintiff's remaining funds. Moreover, Swid asserted counterclaims for breach of the Credit Agreement and for attorneys' fees under the fees provision in the Hypothecation Agreement. Swid contended that he made more than his proportional share of loans to Vetta under the Credit Agreement to repay the draw by the Hong Kong bank, and that since Vetta could not reimburse him, Weinroth was obligated to do so. It is undisputed that Swid loaned 75% of the total money loaned to Vetta in this transaction.

According to Swid, the $120,000 from Sheinberg was to satisfy a different obligation entirely. Therefore, Swid claims, Citibank has the right to retain Weinroth's remaining funds so that Swid may be fully reimbursed. However, this assertion is contradicted by the Assignment Agreement itself, which recites that Swid has already received $120,000 from Sheinberg and simply states that Citibank is assigning its "claim for reimbursement of the Last Draw" without mentioning an amount.

The IAS Court granted defendants' motion for summary judgment to the extent of dismissing all of plaintiff's claims, but severed Swid's counterclaims for trial. The court denied plaintiff's cross-motion for summary judgment on his claims and for dismissal of the counterclaims. We modify as set forth below.

We grant partial summary judgment to plaintiff on his causes of action for conversion and unjust enrichment to the extent of the funds remaining in his Custodial Account. Citibank may not assign a claim in excess of what it is owed (*Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121,

126). The record clearly shows that Swid received approximately $380,000 from Weinroth and $120,000 from Sheinberg to repay an approximately $500,000 debt. As the letter of credit has expired, there will be no further draws on Weinroth's collateral to repay draws by the Hong Kong bank. Thus, the funds should be returned to him.

Summary judgment was properly granted to defendants on plaintiff's fraud claim, the basis of which is Swid's alleged misrepresentation that the letter of credit would not be extended. Weinroth cannot show that he was damaged in any way by the alleged falsehood. As a minority shareholder, Weinroth could not have unilaterally stopped Vetta from requesting the extensions even if he had been present at the board meeting, because the decision was supported by the majority shareholder as well as other shareholders. Weinroth argues that had he known, he would have taken steps earlier to terminate the Hypothecation Agreement. However, his purported unilateral termination was a nullity, whenever made. Such a pledge is irrevocable until the letter of credit expires or the lender otherwise gives permission to rescind the pledge (*Unangst v Roe*, 107 Misc 516, 522).

We reverse the denial of plaintiff's motion for summary judgment on Swid's counterclaim for attorneys' fees. That claim is based solely on a clause in the Hypothecation Agreement that states that Citibank may apply the proceeds of the sale of any assets in the collateral account to reasonable attorneys' fees in connection with "retaking, holding, preparing for sale or selling" the collateral. This provision is inapplicable here. Neither defendant has expended attorneys' fees for these purposes here. Citibank simply liquidated marketable securities. It did not incur attorneys' fees from a real estate closing or sale of inventory. The instant action does not involve the retaking or holding of the collateral. Instead, it centers on Citibank's unauthorized retention of funds in excess of the collateral, as well as a dispute between Weinroth and Swid concerning indemnification for funds expended on Vetta's behalf. These were not the types of claims contemplated by the Hypothecation Agreement.

Neither party is entitled to summary judgment on Weinroth's remaining claims, or on Swid's counterclaim that Weinroth is 50% liable for all debts of Vetta under the Credit Agreement. Issues of fact exist as to whether the Assignment Agreement was supported by consideration. Plaintiff interprets Swid's ambiguous sworn statements as an admission that Swid reimbursed the bank for the last draw even before the assign-

ment took place. This presents a question of fact. Additionally, Swid had repaid the Hong Kong bank's previous two draws pursuant to a guarantee, without receiving anything in return. His repayment of the last draw may have been to satisfy a pre-existing obligation, which would mean that it could not be consideration for assignment of the Hypothecation Agreement to him (*Goncalves v Regent Intl. Hotels,* 58 NY2d 206, 220).

Moreover, as the Credit Agreement is ambiguous as to each party's proportionate share of Vetta's indebtedness, the court may look at extrinsic evidence (*Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191), such as whether the parties had a separate oral agreement to share these debts based on their ratio of stock ownership. The 50-50 repayment mentioned in the Credit Agreement is not necessarily inconsistent with a different proportion of lending; many agreements for loans to corporations provide that all repayment distributions be even until one of the parties is paid off. As both Weinroth and Swid have, at different stages of this litigation, alternately relied upon and repudiated the oral agreement, a trial is needed to determine whether such an agreement existed and how it affected the division of rights and responsibilities under the Credit Agreement. Concur—Ellerin, P. J., Rosenberger, Nardelli, Mazzarelli and Friedman, JJ.