OPINION OF THE COURT
Jack M. Battaglia, J.
*837 To resolve this Small Claims Part action, the court must determine the standard of liability to apply to an innkeeper when a guest’s automobile is vandalized while parked in a garage on the premises. The court determines that, under the circumstances here, the innkeeper is liable only for proven negligence, and not as an insurer or bailee.
On the evening of June 12, 2005, claimant Viola W. Waterton and her husband, Andy Henry, took a room at defendant’s Linden Motor Inn. They knew the facility, and had been guests before. When they arrived, they parked claimant’s 1990 Honda Accord in the below-ground garage on the premises, checked in at the front desk, and retired to their room.
There was no gate or other barrier controlling entry to or exit from the garage, and no attendant or security guard. They paid no separate fee to park in the garage, did not register the vehicle with the front desk, and retained the keys. There was no discussion at all with the desk clerk about the vehicle, nor any discussion about the hours that the desk would be attended. At the front desk, however, there was a monitor that showed the interior of the garage, obviously through a security camera. Ms. Waterton and Mr. Henry denied seeing any sign in the garage that purported to disclaim or limit the motor inn’s responsibility for any loss of, or damage to, the vehicle or its contents while parked in the garage.
At approximately 11:00 p.m., Ms. Waterton and Mr. Henry heard a car alarm sound. Because Ms. Waterton had just exited the shower, and they concluded that the sounding alarm was not on claimant’s vehicle, they did nothing about it. The following morning, when they returned to the car, they found that it had been vandalized, that installed audiovisual equipment had been removed, and that some “expensive” items left in the car, including a video camera, had been stolen. Claimant presented receipts totaling $1,322.45, representing the cost of parts and repairs to the vehicle and the cost of the stolen items.
The court notes at the outset that, in the absence of any evidence that the requisite notices were appropriately posted, the court has no occasion to consider the applicability and effect of those statutory provisions that might otherwise have limited defendant’s potential liability to claimant. (See General Business Law §§ 201, 206; Goncalves v Regent Intl. Hotels, 58 NY2d 206, 215 [1983]; Bleam v Marriott Corp., 237 AD2d 396, 397 [2d Dept 1997].)
“At common law, an innkeeper was an insurer of *838 goods delivered into his or her custody by a guest, and so was absolutely liable for the loss or destruction of such goods ‘unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy.’ ” (Goncalves v Regent Intl. Hotels, 58 NY2d at 214, quoting Hulett v Swift, 33 NY 571, 572 [1865].)
“The obligation encompassed not only goods actually delivered into the innkeeper’s possession, but also property in the guest’s room.” (Id.) “An innkeeper is an insurer of the safety of the property of his guest, brought infra hospitium . . . The innkeeper’s liability, at common law, did not originally extend to cover property not within the walls of the inn, or the buildings used in connection therewith.” (Davidson v Madison Corp., 257 NY 120, 123 [1931] [internal quotation marks omitted]; see also Goncalves v Regent Intl. Hotels, 58 NY2d at 214.) The literal translation of the Latin phrase “infra hospitium” is “within the inn.” (See Black’s Law Dictionary 796 [8th ed 2004].)
The “infra hospitium” concept, with its associated rule of innkeeper liability without fault, appears to have both physical and relational meaning, reflecting its origin and purposes. “The liability of an innkeeper for the goods of his guest, has been settled for centuries.” (Wilkins v Earle, 44 NY 172, 185 [1870].) “This custom, like that in the kindred case of the common carrier, had its origins in considerations of public policy.” (Hulett v Swift, 33 NY 571, 572 [1865].) “The traveler was peculiarly exposed to depredation and fraud. He was compelled to repose confidence in a host.” (Id.) And so, the property of the guest was protected, not only “within the confines of the hotel” and “within the precincts of the inn,” but when “in the care and under the charge of the innkeeper.” (See Penchas v Hilton Hotels Corp., 198 AD2d 10, 11 [1st Dept 1993] [internal quotation marks and citations omitted].)
By mid-nineteenth century, “the days of violence, which in early times required this protection to the traveler, [had] passed away” (see Wilkins v Earle, 44 NY at 185), and the New York Legislature enacted a series of statutes “to restrict the innkeeper’s exposure” (see Goncalves v Regent Intl. Hotels, 58 NY2d at 215). In the “kindred case of the common carrier” (see Hulett v Swift, 33 NY at 572), the Court of Appeals has abandoned the common-law rule based upon categorical relation or status, in favor of the “traditional . . . negligence standard of reasonable care under the circumstances” (see Bethel v New York City Tr. Auth., 92 NY2d 348, 351 [1998]), as it has *839 with respect to landowners (see Basso v Miller, 40 NY2d 233, 241 [1976]).
“In cases of loss, either the innkeeper or the guest must be the sufferer; and the common law furnishes the solution of the question, on which of them it should properly fall.” (Hulett v Swift, 33 NY at 574.) At the time the common-law rules were developed, of course, there was not the wide availability of comprehensive loss coverage that we see as part of our automobile insurance policies, with losses spread and premiums charged according to the dimensions of the risks.
Having apparently chosen to forgo that coverage, claimant seeks to make defendant her insurer. Neither the New York cases, nor those in other states that the court has discovered, clearly establish whether, under the circumstances presented here, defendant should be held as an insurer.
There is no question that at common law the innkeeper could be liable as an insurer for loss or destruction of “the guest’s animals and private equipage.” (See Goncalves v Regent Intl. Hotels, 58 NY2d at 214, quoting Schouler, Bailments § 283, at 288 [3d ed 1897].) Indeed, the innkeeper’s liability is traced to Calge’s case, decided more than 350 years ago, which addressed a horse “deliver[ed] ... to the hostler.” (See Wilkins v Earle, 44 NY at 186, quoting 8 Coke 203, 32a.) If the guest “requires [the horse] to be put to pasture, which is done accordingly, and the horse is stolen, the innholder shall not answer for it.” (Id.) But if the guest “doth not require it, but the innholder, of his own head, puts the guest’s horse to grass, he shall answer for him if he be stolen.” (Id.)
There appears to be no published decision in New York that addresses an innkeeper’s liability for loss of or damage to a guest’s motor vehicle parked in a garage on the premises. In Lader v Warsher (165 Misc 559, 561 [Columbia County Ct 1937]), the court held that a traveling salesman who parked an automobile “in the open air in a vacant lot provided free of charge . . . for guests of [the] hotel” could not hold the hotel responsible “under the doctrine of infra hospitium” (id. at 560) for the loss of a sample case and other property left in the automobile. The court held, in effect, that the property was not “in the care and under the charge of the innkeeper.” (See id. at 561; see also Plant v Howard Johnson’s Motor Lodge, 500 NE2d 1271, 1273 [Ind App 1986]; Miller v Commonwealth Motor Hotels, Inc., 358 Mass 823, 823, 267 NE2d 925, 926 [1971]; Cloward v Pappas, 79 Nev 482, 486, 387 P2d 97, 99 [1963]; Sewell *840 v Mountain View Hotel, Inc., 45 Tenn App 604, 606-607, 325 SW2d 626, 627 [1959].)
In Penchas v Hilton Hotels Corp. (198 AD2d 10, 10 [1993]), a departing guest placed a bag on the rear seat of a livery cab “parked in [the hotel’s] U-shaped off-street driveway entrance”; the bag was stolen while the guest was distracted. In the guest’s negligence action against the hotel, the hotel moved for summary judgment. The Court held that there were triable issues as to whether the hotel had taken “reasonable protective measures, including providing adequate security, to protect guests” from “reasonably foreseeable” criminal activity on the premises. (See id. at 11.) The Court rejected the hotel’s contention, apparently raised to limit its duty to the guest, that the property was not infra hospitium, noting that the phrase includes goods “in the care and under the charge of the innkeeper” (see id.), but not explaining why the doctrine might apply on the facts presented.
The only case found in another state that involved “parking in the basement garage under the hotel” (Governor House v Schmidt, 284 A2d 660, 661 [DC App 1971]) is too distinguishable because the car was “left . . . with the doorman for parking,” and a “garage attendant admitted having custody of the car” (id. at 662; see also Park-O-Tell Co. v Roskamp, 203 Okla 493, 223 P2d 375 [1950]).
Whatever may be the continued viability of the common-law rules of innkeeper liability when applied to other property of a guest, the court can see no good reason to extend them to an automobile parked on a lot or in a garage on the premises, at least in the absence of sufficient facts that would allow a conclusion that the vehicle was placed in the care and under the control of the innkeeper. Such facts are not presented by this case. If there is any reason to hesitate over this conclusion, it arises from the presence of the security camera in the garage. But that, in itself, is not enough. (See Plant v Howard Johnson’s Motor Lodge, 500 NE2d at 1272.) Were it otherwise, the innkeeper who adopted any security measure would be worse off, subjecting itself to insurer liability, than if it did nothing. A result that would so discourage precautionary action would not appear to serve any policy goal.
For similar reasons, and without holding that infra hospitium and bailment are the same thing, the court finds and concludes that there was no bailment of claimant’s automobile or its contents. The court is not aware of any published New York de *841 cisión on the precise question, but decisions in other states provide support (see id. at 1273; Cloward v Pappas, 79 Nev at 486, 387 P2d at 99), and the New York cases on the liability of parking facilities generally, although not entirely consistent (see William V Vetter, The Parking Lot Cases Revisited: Confusion at or About the Gate, 40 Santa Clara L Rev 27, 41-45 [1999]), appear to lead to the result.
Once established, and depending upon whether the bailment is for the mutual benefit of the custodian and the owner of the property or is deemed gratuitous, meaning it is for the sole benefit of the owner, the custodian owes either a duty to exercise “ordinary care” for the property or only “slight” care. (See Aronette Mfg. Co. v Capitol Piece Dye Works, 6 NY2d 465, 468 [1959]; Dalton v Hamilton Hotel Operating Co., 242 NY 481, 487 [1926].) Whatever the duty of care, the bailment creates a duty to account for the loss of, or damage to, the property. (See Voorhis v Consolidated Rail Corp., 60 NY2d 878, 879 [1983]; Aronette Mfg. Co. v Capitol Piece Dye Works, 6 NY2d at 469; Dalton v Hamilton Hotel Operating Co., 242 NY at 488.)
“Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions, and the nature of the transaction.” (Osborn v Cline, 263 NY 434, 437 [1934].) “A bailment . . . describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from what the law regards as a fair approximation of their expectations.” (Ellish v Airport Parking Co. of Am., 42 AD2d 174, 176 [2d Dept 1973], affd on op below 34 NY2d 882 [1974].)
“Park-and-lock” transactions, whether indoor or outdoor, are generally not considered to create a bailment, even when the vehicle cannot be removed by the owner without paying a fee. (See id. at 177-179; Gadsden v Allright Parking Mgt., 2002 NY Slip Op 50255[U] [App Term, 1st Dept 2002]; Greenberg v Kinney Sys., 141 Misc 2d 706, 707 [Civ Ct, Queens County 1988].) Some courts have, however, found park-and-lock transactions to constitute bailments, as when specific assurances as to security and safety were given to the owner (see Brown v Edison Parking Corp., 7 Misc 3d 1028[A], 2005 NY Slip Op 50797[U], *4-5 [Civ Ct, NY County 2005]), or the presence of a security guard contributes to the “operator’s dominion and control over the cars parked within the garage” (see Sealey v Meyers Parking Sys., 147 Misc 2d 217, 220 [Civ Ct, Queens County 1990]). *842 Indeed, “[t]he key words are dominion and control by the bailee.” (See Motors Ins. Corp. v American Garages, 98 Misc 2d 887, 889 [App Term, 1st Dept 1979].)
In our case, there were no assurances, or even any discussion, that would have led claimant and her husband to reasonably expect that defendant was undertaking care and custody of the vehicle. The circumstances were similar to the typical park-and-lock transaction, except here claimant maintained even more control over the vehicle because there were no barriers to access to, or removal of, the car at her will. Unlike the presence of a security guard, a security camera evidences no “dominion and control” over the vehicle by defendant.
Even without a bailment, however, claimant may recover if she has proved that defendant was negligent in failing to take “reasonable protective measures” against “reasonably foreseeable” criminal activity on the premises, and that defendant’s negligence caused her loss. (See Penchas v Hilton Hotels Corp., 198 AD2d at 11; see also Ellish v Airport Parking Co. of Am., 42 AD2d at 178; Brown v Edison Parking Corp., 7 Misc 3d 1028[A], 2005 NY Slip Op 50797[U], *5-6; Bicer v Guishan, Inc., 2001 NY Slip Op 40283[U] [Sup Ct, Kings County 2001]; Linares v Edison Parking, 97 Misc 2d 831, 832-833 [Civ Ct, NY County 1979].)
“[T]o establish foreseeability, the criminal conduct at issue must be shown to be reasonably predictable based on the prior occurrence of the same or similar criminal activity at a location sufficiently proximate to the subject location.” (Novikova v Greenbriar Owners Corp., 258 AD2d 149, 153 [2d Dept 1999]; see also Bicer v Guishan, Inc., 2001 NY Slip Op 40283[U], *5.) Claimant presented no evidence that theft or vandalism in the garage was “reasonably predictable,” and the presence of a security camera is, in itself, insufficient (see id. at *5-6). Claimant and her husband were familiar with the area, but were not concerned about leaving items, which they characterized as “expensive,” in the vehicle overnight.
Assuming duty, claimant must also establish the failure to exercise ordinary care. “Proof that the damage occurred by vandalism, without more, does not suffice to establish the absence of reasonable care.” (Short v United States Postal Serv., 907 F Supp 83, 86 [SD NY 1995]; see also Feuer Hide & Skin Corp. v Kilmer, 81 AD2d 948, 949 [3d Dept 1981].) Nor does “evidence of the mere presence of surveillance cameras.” (See Short v United States Postal Serv., 907 F Supp at 86.) There *843 was insufficient evidence for the court to conclude that defendant’s clerk failed to use reasonable care in monitoring any activity in the garage.
Courts have found that the sounding of a vehicle alarm or the noise that necessarily would have accompanied the damage done to the vehicle should have alerted the defendant’s security guard on patrol or other employee on the premises that something was amiss. (See Brown v Edison Parking Corp., 7 Misc 3d 1028[A], 2005 NY Slip Op 50797[U], *6; Sealey v Meyers Parking Sys., 147 Misc 2d at 220; Linares v Edison Parking, 97 Misc 2d at 831-832.) Here, however, there was no employee on duty in the garage, no evidence that defendant’s clerk did not respond to the alarm heard by claimant and her husband at 11:00 p.m., and no evidence as to the amount of noise that would have been produced by the damage suffered to claimant’s vehicle.
Most importantly, and even assuming that defendant’s clerk failed to respond to the alarm under circumstances that would constitute negligence, there is insufficient evidence for the court to conclude that a failure to respond was the cause of claimant’s loss. Indeed, the only evidence on whether the alarm that sounded at 11:00 p.m. was the alarm on claimant’s vehicle was her testimony and that of her husband that it was not the alarm on her vehicle. The mere fact that the vehicle was vandalized at some time during the night does not establish that claimant and her husband were wrong when they concluded at the time that it was not her alarm.
Claimant has failed to establish prima facie that any negligence by defendant caused the damage to claimant’s vehicle and the theft of installed and stored items.
Judgment for defendant, dismissing the claim.