NGM Mgt. Group, LLC v Bareburger Group, LLC (2024 NY Slip Op 00979)

NGM Mgt. Group, LLC v Bareburger Group, LLC

2024 NY Slip Op 00979

Decided on February 27, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2024

Before: Manzanet-Daniels, J.P., Oing, Scarpulla, Rodriguez, Higgitt, JJ. 

Index No. 651018/18 Appeal No. 1024 Case No. 2023-01081 

[*1]NGM Management Group, LLC, et al., Plaintiffs-Respondents,
v
Bareburger Group, LLC, et al., Defendants-Appellants.
Bareburger Group, LLC, Counterclaim Plaintiff-Appellant,
v
El Toro Group, LLC, et al., Counterclaim Defendants-Respondents.

Law Office of Paul A. Pagano, P.C., Hicksville (Paul A. Pagano of counsel), for appellants.
Geragos & Geragos, APC, New York (Tina Glandian of counsel), for respondents.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about January 27, 2023, which to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing plaintiffs' second, fourth, fifth, and seventh causes of action, denied defendant Bareburger Group, LLC's (Bareburger) motion for summary judgment on its second, third, seventh, and tenth counterclaims and demand for professional fees, and granted plaintiffs' motion for summary judgment dismissing Bareburger's second counterclaim and demand for punitive damages, unanimously modified, on the law, to the extent of granting, in part, defendants' motion for summary judgment dismissing plaintiffs' second and fourth causes of action and, further, awarding summary judgment on the issue of liability on Bareburger's second, third, seventh, and tenth counterclaims and its demand for attorneys' fees, as limited below, and otherwise affirmed, without costs.
This matter relates to five restaurants in Manhattan that were established by plaintiffs NGM Management Group, LLC, Columbus Village, LLC, FiDi District, LLC, Midtown East NY, LLC, and Fuber, LLC. In connection with the restaurants, plaintiffs executed franchise agreements with Bareburger. Each restaurant opened at a different time between 2011 and 2016. After the restaurants encountered financial difficulties, which came to a head in late 2016, plaintiffs and Bareburger entered into an additional a step-in rights (SIR) agreement on March 7, 2017, and plaintiffs executed a restated note, dated May 5, 2017, in favor of Bareburger.
Defendants are entitled to summary judgment dismissing plaintiffs' second cause of action to the extent premised on breach of the franchise agreements through misuse of brand fees, as plaintiffs have abandoned this aspect of the claim. Supreme Court correctly denied summary judgment with respect to the remainder of plaintiffs' second cause of action, premised on failure to maintain separate accounts for each restaurant during the step-in period under both the SIR and franchise agreements as well as allegedly unauthorized distributions under the SIR agreement. Although defendants attempt to demonstrate through submission of financial records that plaintiffs suffered no damages as a result of their failure to maintain separate accounts as required under both agreements, this part of the claim should not be dismissed at this juncture, as defendants effectively concede their breach (see e.g. Kronos, Inc. v AVX Corp., 81 NY2d 90, 95 [1993] ["Nominal damages are always available in breach of contract actions"]; Matter of Schleifer v Yellen, 158 AD3d 512, 513 [1st Dept 2018]). Moreover, defendants' contention that the distributions were indeed permitted under the SIR agreement is unavailing given defendants' failure to demonstrate entitlement to summary judgment dismissing plaintiffs' cause of action for rescission of the SIR agreement based on lack of consideration ([*2]see below). In addition, as limited by the briefs, defendants declined to appeal from denial of their motion to the extent it sought summary judgment to dismiss plaintiffs' sixth cause of action for fraudulent inducement of the SIR agreement.
As is relevant to summary judgment on Bareburger's counterclaims based on alleged breach of the franchise agreements, the remainder of plaintiffs' second cause of action, concerning the maintenance of separate accounts, does not serve to bar such relief (see e.g. Parlux Fragrances, LLC v S. Carter Enters. LLC, 204 AD3d 72, 90 [1st Dept 2022] ["if a breach was not material . . . , performance . . . was not excused"], citing Glen Banks, New York Contract Law § 20:24 at 42-43 [2d ed 28A West's NY Prac Series 2017]).
Bareburger's submission of financial records and affidavits, including from Bareburger CEO Euripides Pelekanos and accountant Harold Deiters, established their prima facieentitlement to summary judgment on their third, seventh, and tenth counterclaims, for breach of the royalty and brand development fee provisions, interest on overdue payments, and liquidated damages, respectively, each under the franchise agreements. On the third counterclaim, Bareburger notes that it seeks only "unpaid royalties and brand development fees for [] the weeks ended September 2, 2018 through March 10, 2019." The affidavit of plaintiffs' accountant Jenny Emexezidis, which plaintiffs submitted in opposition, lacked probative value with respect to the period in question, since it concerned alleged financial irregularities only during an earlier period from January 2017 to August 2018.
Summary judgment is warranted, however, on liability only. The record indicates that defendants controlled the restaurants for some amount of the period for which Bareburger now seeks royalty and brand development fees—Fuber and Midtown until around September 18, 2018, and NGM, Columbus, and FiDi until around January 19, 2019. Moreover, significant royalty and brand development fees were distributed to Bareburger during their longer, total step-in period. Finally, the parties appear to dispute when Bareburger or defendant TIDM, Corp. commenced the exercise of step-in rights. Defendants' arguments on appeal and submissions before Supreme Court suggest that a "step in" occurred only after the SIR agreement in March 2017, yet plaintiffs' submissions indicate that Bareburger stepped in beginning November 2016. Accordingly, although Bareburger demonstrated an unrebutted shortfall in relevant fees for at least some of the period for which recovery is sought, the factual disputes may permit plaintiffs to establish applicable setoffs to a final damages award.
Based on the above, Bareburger should similarly be awarded summary judgment on liability only with respect to its counterclaim asserting breach of the interest on overdue payments provision in the franchise agreements.
Bareburger is also entitled to summary judgment on its tenth counterclaim [*3]for liquidated damages. Plaintiffs do not dispute that the franchise agreements were terminated for cause. Rather, plaintiffs contend that the liquidated damages provision is either an unenforceable penalty or invalid as a nonexclusive remedy for the covered damages.
"The party seeking to avoid liquidated damages has the burden to prove that they are an unenforceable penalty" (Seymour v Hovnanian, 211 AD3d 549, 553 [1st Dept 2022], citing Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc., 36 NY3d 69, 75 [2020]). "If the amount is 'grossly disproportionate' to the probable loss, the provision is a penalty, and courts will not enforce it" (id. at 553, quoting Trustees of Columbia Univ., 36 NY3dat 71). Although "[t]he term 'grossly disproportionate' in the liquidated damages context does not lend itself to a precise definition," "courts have held that liquidated damages clauses that permit a landlord to recover between two or three times the amount of the existing rent or license fee . . . are not 'grossly disproportionate' to the probable loss and therefore, not a penalty" (id. at 554; see e.g. Tenber Assoc. v Bloomberg L.P., 51 AD3d 573, 574 [1st Dept 2008]; Federal Realty Ltd. Partnership v Choices Women's Med. Ctr., 289 AD2d 439, 440-442 [2d Dept 2001]).
Here, the relevant section of the franchise agreements provides for "liquidated damages equal to the average value of the Royalty Fees [plaintiffs] paid (per month) to [Bareburger] during the twelve (12) months before the termination multiplied by (i) twenty-four (24), being the number of months in two (2) full years, or (ii) the number of months remaining during the term of this Agreement, whichever is higher."
First, the provision's reliance on an average of monthly royalty fees actually paid in calculating the total amount due provides strong support to the provision's enforceability, since the provision thus "bears a reasonable proportion to the probable loss" (X.L.O. Concrete Corp. v Brady & Co., 104 AD2d 181, 184 [1st Dept 1984]; see e.g. Trustees of Columbia Univ., 36 NY3d at 75 [comparing liquidated damages amount to total that would have been received under full compliance with the contract]). Bareburger notes that it "only seeks two years" of lost royalty fees, and plaintiffs' flat assertion that the provision "is conspicuously disproportionate to foreseeable or probable loss" ultimately failed to meet their burden to prove that the provision is a penalty. The provision is thus not unenforceable on this basis.
In addition, plaintiffs' latter contention—that the liquidated provision is invalid since it is not an exclusive remedy (see X.L.O. Concrete Corp., 104 AD2d at 184-185)—is unavailing inasmuch as no other provisions of the franchise agreements address lost future royalties paid from franchisees' operation of the restaurants in the event that the franchise agreements are terminated.
Bareburger should accordingly be awarded summary judgment on liability [*4]on its tenth counterclaim for breach of the liquidated damages provision of the franchise agreements, with the final amount of damages awarded in this action accounting for distributions demonstrated to have been unauthorized, if any (see below), or other setoffs established from disputed periods of control or financial records.
Bareburger also seeks summary judgment on its second counterclaim, for breach of the franchise agreements' provision prohibiting plaintiffs from contesting Bareburger's ownership or the validity of Bareburger's trademarks (the no-challenge provision). Plaintiffs argue that their challenges to the marks did not violate the provision since they were made in reliance of judicial findings by Supreme Court in a separate action between Bareburger co-founders in Stavroulakis v Pelakanos (58 Misc 3d 1221[A] [Sup Ct, NY County 2018]) (the co-founder action). In addition, plaintiffs argue that the provision is invalid as against public policy.
The no-challenge provision is unequivocal: "You shall not contest the validity of or our interest in the Marks or assist others to contest the validity of or our interest in the marks." Plaintiffs' earlier pleadings in this action alleged, among other things, that Bareburger made misrepresentations concerning its ownership of and capacity to grant use of the marks. In addition, plaintiffs previously asserted claims for fraudulent procurement of trademarks under 15 USC § 1120, alleging that Bareburger "was interfering with Bareburger Inc.'s [the original Bareburger entity in which the plaintiff co-founder had an interest] intellectual property" and then "created [a] fraudulent Trademark Assignment agreement." Plaintiffs' attempted distinction between "contest[ing]" prohibited by the provision, on the one hand, and their "reli[ance] on [a] judicial finding" of the co-founder's successful challenge of Bareburger's marks, on the other, is unavailing. In the other action, the plaintiff's challenge to Bareburger's interest in the marks was grounded in corporate law and mounted in his status as an uncompensated co-founder and interest-holder in the original Bareburger entity. Here, the action is a contractual dispute between Bareburger and its franchises, with an on-point provision categorically prohibiting any contest to Bareburger's interest in the marks. That plaintiffs violated the letter of the provision is plain, especially since the abovementioned pleadings were filed after the co-founder action settled the issue of the marks' ownership in Bareburger's favor.
Plaintiffs' further contention that the provision is void as against public policy is also without merit. "The general rule of licensee estoppel provides that when a licensee enters into an agreement to use the intellectual property of a licensor, the licensee effectively recognizes the validity of that property and is estopped from contesting its validity in future disputes" (Idaho Potato Commission v M & M Produce Farm & Sales, 335 [*5]F3d 130, 135 [2d Cir 2003]; see Capri Sun GmbH v American Beverage Corp., 414 F Supp 3d 414, 425 [SD NY 2019] ["In cases involving a so-called 'no-challenge' provision in a license agreement, the provision made the estoppel clear and explicit"]).The Lear balancing test, derived from Lear, Inc. v Adkins (395 US 653 [1969]), balances the "strong federal policy favoring the full and free use of ideas in the public domain" (id. at 674) with "the competing demands of the common law of contracts" (id. at 668; see Idaho, 335 F3d at 135). Although the Lear test originally applied to patents, it "has also been frequently applied to trademark licensing contracts" (Idaho, 335 F3d at 136). "[C]ourts in th[e] [trademark] context," however, "have generally precluded licensees from challenging the validity of a mark they have obtained the right to use" (id.; see e.g. Beer Nuts, Inc. v King Nut Co., 477 F2d 326, 329 [6th Cir 1973] ["public interest in [trademarks] . . . is not so great that it should take precedence over the rule of the law of contracts that a person should be held to his undertakings," where challenging party promised in earlier settlement agreement to "recogni[ze] . . . the validity of the trademark"]). Ultimately, courts "have enforced such agreements only to the extent that enforcement does not result in a public injury" (id.) in the form, for example, of risk that the public may "be enticed into buying A's product when it wants B's product" (T & T Manufacturing Co. v A.T. Cross Co., 587 F2d 533, 538 [1st Cir 1978], quoting General Baking Co. v Gorman, 3 F2d 891 [1st Cir 1925]).
Here, plaintiffs have made no showing regarding the potential for public injury accruing from Bareburger's use and the enforceability of its marks. Moreover, this action does not involve an allegedly overbroad trademark that harms the public interest (see e.g. Idaho, 335 F3d at 132 [concerning Idaho Potato Commission's interests in "(1) the word 'IDAHO' in a distinctive font; and (2) the phrase 'GROWN IN IDAHO' written inside an outline of the boundaries of the state of Idaho"]; MWS Wire Industries, Inc. v California Fine Wire Co., Inc., 797 F2d 799, 800 [9th Cir 1986] [concerning two wire companies' "multifilar" wire product]). Accordingly, plaintiffs' argument based on the Lear test does not bar enforcement of the franchise agreements' 'no-challenge' provision. Bareburger is therefore also entitled to summary judgment on its second counterclaim.
Additionally, considering the award of summary judgment to Bareburger on its second, third, seventh, and tenth counterclaims, Bareburger is also entitled to summary judgment on the issue of liability on its demands, under the franchise agreements, for reasonable attorneys' fees in connection with those counterclaims.
The remaining claims at issue on appeal are based on the SIR agreement and the restated note. Plaintiffs' fifth cause of action is for a declaratory judgment rescinding the SIR agreement for lack of consideration[*6]. Defendants maintain that certain "methodologies" in the SIR agreement—specifically, the requirement that TIDM, in "exercising Step in Rights on behalf of Bareburger," "shall hold all funds received from the operations of the restaurants solely for such purpose, and shall not make distributions to Bareburger or Manager, except in connection with any existing obligations"—constituted consideration. However, in response to plaintiffs' claim that certain distributions to Bareburger were not authorized by the SIR agreement (see below), defendants argue that the distributions were in fact permitted by the (pre-SIR agreement) franchise agreements as well. Accordingly, defendants' position that the consideration supporting the SIR agreement is a contractual constraint (in the SIR agreement) to abide by pre-existing contractual obligations (in the franchise agreements) is without merit. Although "courts have not hesitated to find sufficient consideration . . . in what is now the proverbial peppercorn" (Weiner v McGraw-Hill, Inc., 57 NY2d 458, 464 [1982]), the specific part of SIR agreement section 2 on which Bareburger relies is insufficient (see Goncalves v Regent Intl. Hotels, 58 NY2d 206, 220 [1983] ["A promise to perform an existing legal obligation is not valid consideration"]).
Defendants' further argument that plaintiffs' demand for rescission was untimely is similarly unavailing as their relied-upon cases are distinguishable. For example, although the Court of Appeals stated in New York Tel. Co. v Jamestown Tel. Corp. that the "right to rescind must be exercised promptly after the injured party learns of the wrong" (282 NY 365, 372 [1940]), it did so in discussing the nature of rescission for breach of contract or fraud and the potential waiver thereof (see id. ["there can be no rescission where the breach of contract or fraud has been waived by the party who has been wronged"])—as opposed to rescission for lack of consideration. Supreme Court thus properly denied summary judgment to dismiss plaintiffs' fifth cause of action.
Supreme Court also properly denied summary judgment to dismiss plaintiffs' second cause of action to the extent predicated on the SIR agreement. First, as with that part of the claim based on the franchise agreements, defendants do not dispute that they failed to maintain separate accounts for the restaurants during the step-in period. Additionally, to the extent the claim is based on distributions that plaintiffs argue were not authorized by the SIR agreement, summary judgment to dismiss the claim was properly denied given not only the ambiguity created by the provision's reference to "existing obligations," but also the parties' disputes regarding financial records and the timeline of control.
Plaintiffs' fourth cause of action requests rescission of the restated note based on Bareburger's alleged failure to advance the contemplated funds as well as fraudulent inducement. Defendants' submission of financial records established [*7]that the funds were advanced prior to the note's execution, which is corroborated by the note's description of the amounts as existing indebtedness. In opposition, plaintiffs attacked the credibility of Bareburger, its principals, and its records in general terms. Plaintiffs failed, however, to submit competent evidence disputing the content of the records as to the payments shown, thus failing to raise a question of fact on liability (see e.g. Egleston v Kalamarides, 89 AD2d 777, 778 [4th Dept 1982] [impeachment evidence "ha[s] no value as evidence-in-chief and, standing alone, [is] insufficient to raise a triable issue of fact"], mod on other grounds 58 NY2d 682 [1982]). Accordingly, summary judgment to dismiss this cause of action should have been granted to the extent of dismissing that part predicated on the failure to advance the contemplated funds. Additionally, plaintiffs' contentions regarding potential repayment during the step-in period can be addressed by setting off any demonstrated reimbursement in calculating damages.
Regarding the other basis for the fourth cause of action—fraudulent inducement—defendants' argument that the request for rescission was untimely is unavailing under the circumstances. The alleged fraudulent inducement concerned promised future conduct, and the standard for timeliness is one of reasonableness (see Schenck v State Line Tel. Co., 238 NY 308, 314 [1924] [for "rescission to be effective," it "must be announced without unreasonable delay"]). Supreme Court therefore properly declined to award summary judgment dismissing plaintiffs' fourth cause of action to the extent premised on fraudulent inducement.
Supreme Court properly denied summary judgment to dismiss plaintiffs' seventh cause of action for a declaratory judgment to the extent it concerns the SIR agreement, for the reasons stated regarding plaintiffs' fifth cause of action. Additionally, Supreme Court properly denied summary judgment to dismiss plaintiffs' seventh cause of action to the extent it concerns the restated note, except inasmuch as based on the alleged failure to advance the funds, as described above with respect to plaintiffs' fourth cause of action.
Finally, Supreme Court properly declined to award defendants professional fees under § 11.3 of the franchise agreements and under § 9 of the SIR agreement. Moreover, defendants' demand for punitive damages was properly stricken (see e.g. Rocanova v Equitable Life Assur. Soc. of U.S., 83 NY2d 603, 613-614 [1994]).
We have considered the parties' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2024